DECISION AND JUDGMENT ENTRY
{¶ 1} Michael Travis Knapp ("Father") appeals the judgment of the Lawrence County Court of Common Pleas, ruling upon various motions of the parties. First, Father contends that the trial court erred in granting Mother visitation with the minor child on an alternate week basis. Because we find that the trial court did not abuse its discretion in granting Mother alternating week visitation, we overrule Father's first assignment of error. Next, Father contends the trial court erred in ordering Father, the residential parent and legal custodian, to pay child support to Mother, the non-custodial parent. Because we find that the trial court failed to attach the statutorily required child support guideline worksheet to its decision or make the statutorily required findings of fact to deviate from the guideline child support calculation, we sustain father's second assignment of error, in part.
 {¶ 2} In his third assignment of error, Father contends that the trial court erred in determining that Father owes Mother $8,702.95 for her net equity in the marital residence and certain items of personal property Father retained after the divorce. Because we find that the trial court abused its discretion in calculating the amount Father owes Mother to the extent that the court modified the original property division, we sustain Father's third assignment of error. Next, Father contends that the trial court erred in ordering him to pay a $350 penalty for failing to timely pay Mother for her equity in the marital residence and her share of an income tax refund. Because Father failed to cite any authority in support of his arguments, we decline to address his fourth assignment of error.
 {¶ 3} In his fifth assignment of error, Father contends that the trial court erred in failing to strike the magistrate's September 20, 2004 decision and reinstate the magistrate's July 8, 2004 decision. Because we find that a magistrate's decision remains interlocutory until adopted by the trial court, we overrule Father's fifth assignment of error. Finally, Father contends that the trial court erred in considering Mother's untimely objections to the magistrate's decision. Because we find that consideration of the issues raised in Mother's objections was necessary for the court to fully dispose of all of the parties' pending motions, and because Father's own objection to the magistrate's decision brought those issues to the trial court's attention, we conclude that any error in considering Mother's untimely objections was harmless. Therefore, we overrule Father's sixth assignment of error. Accordingly, we affirm the trial court's judgment in part, reverse it in part, and remand this cause for further proceedings consistent with this opinion.
 I. {¶ 4} The parties married on August 12, 2000 and have one daughter born as issue of the marriage; namely Madison Shae Knapp, born on November 25, 2000. On February 19, 2003, the trial court issued a divorce decree. The decree named Father as Madison's residential parent and legal guardian. Additionally, it provided that Mother was to exercise visitation each week for three days and three nights, commencing on Monday at 10:00 a.m. and ending on Thursday at 10:00 a.m. the first week, commencing on Tuesday and ending on Friday, the second week, and continuing that progression in subsequent weeks.[1] The parties were to comply with Loc.R. 53 in all other respects. Because Mother had little income at the time of the divorce, the trial court did not order child support at that time.
 {¶ 5} Father was to retain the marital residence, and assume the debt associated therewith. The trial court found that the residence was worth $172,000. The court found that Mother was entitled to one-half of the equity in the property as calculated by a formula set forth in the decree. The court specifically ordered Father to pay Mother for her share of the equity within 45 days after she vacated the marital residence.
 {¶ 6} Additionally, the order required Mother to pay all utilities at the marital residence until she vacated the premises, and to be financially responsible for any damages to the premises, less reasonable wear and tear. The court ordered the parties to draw lots for all personal property in the residence, excepting the television, which Father was to retain. Finally, the court ordered Father to pay Mother $500, representing the balance of her share of the parties' 2001 tax refund, within 45 days after she vacated the marital residence.
 {¶ 7} On January 26, 2004 Mother filed a motion in contempt, alleging that Father failed to abide by the terms of the divorce decree by: (1) willfully failing to pay her one-half of the equity in the real property; (2) failing to draw lots for the personal property, or to pay her one-half of the Big Sandy receipts in exchange for her interest in the property; and (3) failing to pay her $500 representing her share of the income tax refund. Additionally, she moved the court for a shared parenting order.
 {¶ 8} Father then moved the court for an order to show cause why Mother should not be held in contempt for failing to draw lots to divide the marital personal property. Father also moved the court for an order determining the net amount of money he owed Mother. Additionally, based upon Mother obtaining gainful employment, Father moved the court to establish a child support order. Father later filed a separate motion to modify the parties' visitation schedule to standard Loc.R. 53 visitation, alleging a change of circumstances based upon the child's expected enrollment in preschool.
 {¶ 9} The magistrate conducted a hearing on the parties' various motions and issued a magistrate's decision on July 8, 2004. Mother filed a motion for reconsideration of the magistrate's decision, because the magistrate entered his decision before the date that Mother's counsel agreed to submit a proposed decision. After conducting a hearing upon the motion for reconsideration, the magistrate rescinded his July 8, 2004 decision and established a timeline for Mother to submit her proposed decision and for Father to reply to her proposal.
 {¶ 10} On September 20, 2004, the magistrate issued a second magistrate's decision. Father filed objections to the second magistrate's decision on September 28, 2004, and Mother filed her objections on October 12, 2004. The trial court conducted a hearing on the parties' respective objections and issued a decision and judgment entry on December 17, 2004.
 {¶ 11} Based upon the financial exhibits produced by Father, the trial court concluded that Father owed Mother $5,494.60 for her share of the equity in the marital residence plus $500 for her share of the tax refund, for a total of $5994.60. The court noted that the parties did not draw lots for the marital property as ordered in the decree. After finding that Father retained all of the furniture the parties purchased from Big Sandy, the court ordered him to pay Mother one-half of the value of that property — $2,358.35.
 {¶ 12} The trial court also found that Father did not follow the orders of the court regarding the payment for the equity in the residence and the tax refund, which was to be made within forty-five days after Mother vacated the residence. The court found that there was no justification for Father's non-compliance with its previous orders, and ordered him to pay twenty-five dollars per month, three hundred fifty dollars total, for his nine-month delay in making the payments.
 {¶ 13} With regard to the parties' daughter, the court found that there had not been a change in circumstances of the child or the residential parent to warrant a change of custody. However, the court did find that Mother's circumstances changed drastically, in that she obtained employment and, at the time of the hearing, was earning $35,000 annually. Because of her employment, Mother was no longer routinely available to visit with Madison during the day from Tuesday to Friday. The court concluded that the parenting time should be evenly divided between the parties in order to foster relationships between Madison her parents, and her three half-siblings who reside with Mother.[2] Accordingly, the court ordered alternating week visitation, to commence on Monday mornings between 8:00 and 9:00 a.m., with other visitation matters, including holidays, governed by Loc.R. 53.
 {¶ 14} Finally, the court ordered Father to pay child support to Mother "pursuant to the child support guidelines set for[th] by the Legislature of the State of Ohio" in the amount of $1,867.20.
 {¶ 15} Father appeals raising the following assignments of error: "1. The Trial Court erred when it ordered that [Mother] be granted visitation with the parties' child on an alternate week basis. 2. The Trial Court erred when it ordered [Father], the custodial parent, to pay child support to [Mother], the non-custodial parent. 3. The Trial Court erred when it found that [Father] owes [Mother] $8,702.95 for her net equity in the marital premises and for certain items of personal property as to which the parties were originally ordered to `draw lots.' 4. The Trial Court erred in ordering [Father] to pay [Mother] an additional $350.00 as a penalty for alleged late payment of [Mother's] net equity in the marital residence and her portion of an income tax refund. 5. The Trial Court erred by not striking from the record the Magistrate's Decision filed on September 20, 2004, and by failing to reinstate the Magistrate's Decision filed on July 8, 2004. 6. The Trial Court erred in ruling on [Mother's] objections to the Magistrate's Decision when they were not filed in a timely manner."
 II. {¶ 16} In his first assignment of error, Father contends that the trial court improperly applied the factors set forth in R.C.3109.051(D)(1)-(15) in determining what visitation schedule was in Madison's best interest. Specifically, Father argues that the trial court failed to consider: (1) Mother's failure to avail herself of all of the holiday visitation afforded to her by the previous order; (2) Mother's late arrival for Christmas visitation, after she specifically requested an earlier pickup time; and (3) Mother's responsibility to care for her three other children contrasted with Father's ability to "devote all of his time" to his only child. Additionally, Father argues that the court abused its discretion by increasing Mother's visitation. Instead, he argues the court should have retained the original allocation of 42% of the child's time with Mother and 58% with Father by simply changing the days and times of Mother's visitation to accommodate her work schedule. Father urges us to conclude that the trial court's alternating week visitation schedule results in a de facto shared parenting order.
 {¶ 17} In making a determination that modification of visitation is in the best interest of the child, a trial court must consider the factors set forth in R.C. 3109.051(D), which provides in relevant part: "In determining whether to grant companionship or visitation rights to a parent * * *, and in determining other visitation matters * * * the court shall consider all of the following factors: (1) The prior interaction and interrelationships of the child with his parents, siblings, and other persons * * *; (2) The geographic location of the residence of each parent and the distance between those residences * * * (3) The child's and the parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule; (4) The age of the child; (5) The child's adjustment to his home, school, and community; (6) If the court has interviewed the child in chambers * * * the wishes and concerns of the child, as expressed to the court; (7) The health and safety of the child; (8) The amount of time that will be available for the child to spend with siblings; (9) The mental and physical health of all parties; (10) Each parent's willingness to reschedule missed visitation and to facilitate the other parent's visitation rights * * *; (16) Any other factor in the best interest of the child."
 {¶ 18} "[W]hen a parent seeks to modify a previous visitation arrangement, it is that party who bears the burden of proof as to whether the prior arrangement was not in the best interests of the [child]." Bodine v. Bodine (1988), 38 Ohio App.3d 173, 175. We will not reverse a trial court's decision on a motion for modification of visitation rights absent an abuse of discretion.Archer v. Archer (Sep. 24, 1997), Pickaway App. No. 96CA37. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. When applying the abuse of discretion standard of review, we must not substitute our judgment for that of the trial court. In re Jane Doe I (1991), 57 Ohio St.3d 135,138. We must presume the findings of the trial court are correct because the trial judge is best able to observe the witnesses and use those observations in weighing the credibility of the testimony. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 81.
 {¶ 19} Our review of the record reveals that the trial court considered the relevant statutory factors, focusing on the parents' available time and the amount of time that will be available for Madison to spend with her siblings. At the hearing, Mother testified that she was now working outside of the home, from either 9:00 a.m. to 6:00 p.m. or 10:00 a.m. to 7:00 p.m., five days a week. The days she works vary from week to week, and, depending upon when and how far in advance her supervisor makes the schedule, she might know her schedule as much as three weeks in advance. Mother stated that, due to the loss of several employees, she was obligated to work more weekend hours than usual while her employer was shorthanded. Mother also testified that, because of her existing employment schedule, she was only able to exercise a fraction of her Tuesday morning to Friday morning visitation with Madison.
 {¶ 20} Based upon Mother's testimony regarding her lack of a fixed work schedule and the parties' previous visitation schedule, which was a mere twelve hours short of being a complete 50-50 split of Madison's time, we cannot find that the trial court abused its discretion in awarding Mother alternating week visitation. We disagree with Father's assertion that the alternating week visitation is tantamount to a de facto shared parenting order. While each party spends equal time with Madison under the order, we note that Father remains Madison's sole residential parent and legal custodian. The parties do not share decision-making authority, as they would under a shared parenting plan. Instead, Father retains that authority.
 {¶ 21} Additionally, while we are troubled by the fact that neither party appears to have understood or followed the court's prior visitation order, we cannot conclude that the trial court abused its discretion by failing to penalize Mother for misunderstanding the holiday visitation schedule. Nor can we conclude, as urged by Father, that the trial court abused its discretion in failing to reduce Mother's visitation because she has more than one child, and could not devote her full attention to Madison during every moment of her visitation. Accordingly, we overrule Father's first assignment of error.
 IV. {¶ 22} In his second assignment of error, Father contends that the trial court erred as a matter of law when it ordered him to pay child support when he is Madison's residential parent and legal custodian. Father contends that the trial court erred as a matter of law by utilizing the wrong child support computation worksheet, and by failing to attach the worksheet to its order. Additionally, Father asserts that under R.C. Chapter 3119, a court can never require a sole residential parent and legal custodian to pay child support to a non-custodial parent.
 {¶ 23} Ordinarily, we review child support matters under the abuse of discretion standard. Booth v. Booth (1989),44 Ohio St.3d 142, 144. However, the Ohio Supreme Court has held that: (1) The child support guidelines require a trial court to complete a child support computation worksheet and include it in the record.
(2) This requirement is mandatory and must be literally and technically followed.
(3) The court must enter any deviation from the applicable worksheet and the basic child support schedule in its journal and must include findings of fact to support such determination.DePalmo v. DePalmo (1997), 78 Ohio St.3d 535, 538, citingMarker v. Grimm (1992), 65 Ohio St.3d 139, paragraphs one through three of the syllabus. See, also, Long v. Long,162 Ohio App.3d 422, 2005-Ohio-4052, at ¶ 9; Murral v. Thomson,
Hocking App. 03CA8, 2004-Ohio-432, at ¶ 17.
 {¶ 24} Here, the trial court failed to complete a child support computation worksheet and include it in the record. This constitutes reversible error. Marker at 143; Long at ¶ 10;Murral at ¶ 17.
 {¶ 25} Additionally, we note that the trial court appears to have deviated from the guideline child support amount, in that the court ordered the sole residential parent and legal custodian to pay child support to the non-custodial parent. R.C. 3119.22
provides that if a court elects to deviate from the amount of child support calculated pursuant to the basic child support schedule and the applicable worksheet, it must first determine that that amount would be unjust or inappropriate and would not be in the best interest of the child, and make findings of fact to support that determination. However, the court's judgment entry fails to make such findings.
 {¶ 26} We find merit in Father's second assignment of error to the extent that the trial court failed to: (1) complete a child support guideline worksheet and include it in the record; (2) determine that the guideline amount of support would be unjust, inappropriate, and not in the best interest of the child; and (3) make findings of fact to support a deviation from the guideline amount of child support. These errors have deprived this court of an adequate record to ensure that the trial court's child support order is subject to meaningful review. Therefore, at this time we decline to address Father's contention that the court cannot order him to pay child support to the non-custodial parent. Accordingly, we sustain Father's second assignment of error in part.
 IV. {¶ 27} In his third assignment of error, Father contends that the trial court erred in ordering him to pay Mother $8,702.95 for her net equity in the marital residence and certain items of personal property, for which the trial court originally ordered the parties to draw lots.
 A. {¶ 28} First, Father argues that the trial court erred in departing from the calculation of Mother's equity in the marital residence that he submitted to the court. He claims that his calculation followed the formula set forth by the court in the divorce decree, and he claims no evidence supported the trial court's calculation. We disagree.
 {¶ 29} Pursuant to the divorce decree, Mother was to receive one half of the equity in the marital residence, less one-half of the house payments Father made from February 2002 until Mother vacated the marital residence, and certain marital debts, including debts to Washington Mutual, Member's Choice Credit Union, and Sears, as of the date of the parties' separation. The court also specified that the cost of the engagement ring and an additional $500, representing a ring mother traded in at the time of the engagement ring purchase, should be deducted from the Washington Mutual debt.
 {¶ 30} The divorce decree specified that the value of the marital residence was $172,000. At the hearing, Father produced a payoff statement for the mortgage on the marital residence stating that the principal balance of the mortgage, as of March 5, 2003, was $136,711.56. The payoff statement included a line item for interest due from February 1, 2003 to March 24, 2003, of $1,675.61, and provided that additional interest was to be calculated at a per diem rate of $31.37. The trial court determined that the appropriate day to set the equity in the house was February 28, 2003; the day Mother vacated the premises. However, in determining the mortgage payoff amount, the trial court accepted the principal balance of the mortgage, and added interest of $31.37 for 19 days, arriving at a payoff figure of $137,307.59.[3] Thus, the total equity in the marital residence was $34,692.41. The trial court determined that one one-half of that amount was $17,396.20. Our calculation reveals that the correct amount is $17,346.20.
 {¶ 31} Then, the trial court found, pursuant to Father's exhibit, that the parties owed $2,442.59 to Sears, and $3,241.73 to Members Choice Credit Union. The court noted that the parties' debt to Washington Mutual was $5,214.09, from which it deducted $1,929 representing the purchase price of the engagement ring, and $500 representing the ring Mother traded in at the time of the engagement ring purchase. The total of the debts enumerated in the court's formula was $8,469.41, with one-half of that amount, or $4,234.70, to be deducted from Mother's share of the equity.
 {¶ 32} Finally, the trial court subtracted $7,666.90, representing one-half of the house payments Father made from the time of the separation until Mother vacated the marital residence. Thus, pursuant to the formula set forth in the decree, the trial court deducted a total of $11,901.60 from Mother's share of the equity. Accordingly, in the absence of the trial court's mathematical error, Father would owe Mother $5,444.60 for her share of the equity, plus $500 for her share of the tax refund, for a total of $5,944.60 due to Mother.
 {¶ 33} Father argues that the trial court should have adopted his calculation of Mother's equity in the marital residence. In his calculation, Father claims that the mortgage payoff was $138,000 as of February 3, 2003.[4] However, the payoff statement Father submitted, and that the trial court used in its calculation, states otherwise. Therefore, we cannot find that the trial court abused its discretion in calculating the payoff for the mortgage in accordance with the payoff statement submitted by Father.
 {¶ 34} In his calculation, Father deducted $136 for a "Verizon Bill" and $127.40 for "Buckeye Rural". The trial court declined to factor those items into the calculation of Mother's equity in the marital residence, noting, "no evidence was presented as to any unpaid utility bills on the marital residence." Our review of the record reflects that the trial court's statement is correct. Further, we note that the decree did not specify that any unpaid utility bills were to be deducted from Mother's share of the equity in the residence. Rather, the decree provided that Mother was solely responsible for the payment of all utilities at the marital residence through the date that she vacated the premises. Father did not claim that Mother failed to pay the utility bills in his contempt motion. Nor did he present any evidence tending to show that the bills remained unpaid, or that he actually paid them himself. Accordingly, we cannot find that the trial court abused its discretion in failing to consider these amounts.
 {¶ 35} Additionally, Father sought to deduct a $462 furnace repair bill from Mother's share of the equity, on the basis that the decree provided she would be responsible for any damages to the marital residence, less reasonable wear and tear. The only evidence that Father introduced regarding the damage to the furnace or its repair was his own testimony, a photograph purportedly depicting a clogged furnace filter Father claims to have removed from the furnace, and a photograph of what appears to be an outdoor air conditioning unit with ice and/or snow covering the top of it.
 {¶ 36} In his testimony, Father claimed to have paid the heating and cooling contractor who originally installed the unit, an acquaintance of his from high school, $462 cash to replace a burned motor. Despite the fact that the house was only about one year old, Father's testimony reflected that neither he nor the contractor even attempted to submit a warranty claim for the alleged repair. Given the complete lack of supporting evidence to demonstrate either the cause of the furnace problems or the repairs allegedly made, we cannot find that the trial court abused its discretion in refusing to believe Father's testimony. Therefore, we conclude that the trial court did not abuse its discretion in excluding the $462 furnace repair bill from its calculation of Mother's equity in the marital residence.
 {¶ 37} Based upon the foregoing, we cannot conclude that the trial court abused its discretion in holding that Father owed Mother $5,494.60 representing her share of the equity in the marital residence. Although we do note that, absent the trial court's mathematical error in calculating the net equity after the mortgage payoff, the correct amount is $5,444.60.
 B. {¶ 38} Next, Father contends that the trial court abused its discretion in ordering him to pay Mother $2358.35 for the marital furniture he retained after the divorce. Father contends that the court found both parties in violation of the divorce decree because they did not draw lots to divide the marital personal property, and then tried to fashion a remedy without any information about exactly what items of personal property each party had in their possession. Therefore, Father argues that the trial court abused its discretion by ordering him to pay Mother one-half of the value of the property he retained.
 {¶ 39} A trial court enjoys broad discretion in crafting an equitable division of marital property in a divorce proceeding. R.C. 3105.171(C)(1); Holcomb v. Holcomb (1989),44 Ohio St.3d 128, 131; Worthington v. Worthington (1986), 21 Ohio St.3d 73,76; Martin v. Martin (1985), 18 Ohio St.3d 292, 294-295;Cherry v. Cherry (1981), 66 Ohio St.2d 348, 355. Despite the trial court's broad discretion, Ohio law requires the court to divide marital property equitably between the parties. R.C.3105.171(B). In most cases, this requires the court to divide the marital property equally. R.C. 3105.171(C)(1). However, if equal division would produce an inequitable result, the court must divide the property in a way that the court determines to be equitable. Id.
 {¶ 40} Once a court has made an equitable property division, it has no jurisdiction to modify its decision. R.C. 3105.171(I); see, also, Ricketts v. Ricketts (1996), 109 Ohio App.3d 746,751. However, we have previously recognized that the trial court retains jurisdiction to "clarify and construe its original property division so as to effectuate its judgment." McKinley v.McKinley (June 27, 2000), Athens App. 99CA52, citing Redding v.Redding (Dec. 20, 1999), Clinton App. No. CA99-06-015; cf. Inre Dissolution of Marriage of Seders (1987), 42 Ohio App.3d 155,156, and Parsons v. Parsons (Aug. 15, 1997), Jackson App. No. 96CA791. While we have recognized that the court has broad discretion in clarifying the terms of its previous decree, we have also recognized that a court order purporting to clarify the prior judgment may not vary from, enlarge, or diminish the relief embodied in the final decree. McKinley, citing Weller v.Weller (1996), 115 Ohio App.3d 173, 179; Stackhouse v.Stackhouse (July 25, 1997), Montgomery App. No. 16244, unreported.
 {¶ 41} Here, in dividing the marital personal property at the time of the divorce, the trial court ordered the parties to "draw lots." After the post-decree motion hearing, the trial court found that neither party complied with its previous order to "draw lots." The court specifically found that Father failed to prove by a preponderance of the evidence that Mother retained possession of a dental curing light, a DVD player, and a surround sound system. The court also noted that a queen size bed in Mother's possession was not marital property because it was purchased for her daughter from support payments made by that child's father. The court then determined that Father retained possession of certain furniture that the parties purchased from Big Sandy, and ordered him to pay Mother one-half of the value of that property, or $2,358.35.
 {¶ 42} This order unquestionably varies from the court's previous order for the parties to "draw lots." Additionally, we note that there was absolutely no evidence in the record to establish exactly what marital personal property Mother retained in her possession, or what the value of that property might be. Therefore, it is impossible for the trial court, or for this court upon review, to know whether the payment order enlarges, or diminishes the relief afforded to the parties in the final decree. Accordingly, we conclude that the trial court abused its discretion in ordering Father to pay Mother one-half of the value of the furniture he retained.
 C. {¶ 43} Based upon the foregoing, we conclude that the trial court abused its discretion in calculating the amount Father owes Mother to the extent that the court modified the original property division and ordered Father to pay mother $2358.35 to compensate her for one-half of the value of the furniture Father retained. Accordingly, we sustain Father's third assignment of error.
 V. {¶ 44} In his fourth assignment of error, Father contends that the trial court erred in ordering him to pay Mother an additional $350 as a penalty for his failure to timely pay her for her share of the equity in the marital residence and for her portion of the income tax refund. Father argues that he offered to pay Mother according to his own calculation. Because she refused to accept that amount without reserving the right to litigate whether Father owed more, he claims that he was entitled to wait for the court to resolve the dispute before making any payment required by the decree. Additionally, Father contends that the trial court improperly imposed a contempt penalty without first finding that he was in contempt of court.
 {¶ 45} As the appellant, Father has the burden of affirmatively demonstrating error on appeal. U.S. AviationUnderwriters, Inc. v. B.F. Goodrich Co., 149 Ohio App.3d 569,2002-Ohio-5429, at ¶ 29, citing Angle v. W. Res. Mut. Ins. Co.
(Sept. 16, 1998), 9th Dist. No. 2729-M; Frecska v. Frecska
(Oct. 1, 1997), 9th Dist. No. 96CA0086. An appellant's brief must include argument and law, "containing the contentions of appellant with respect to each assignment of error presented for review * * *, with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 16(A)(7). We are not obligated to search for authority to support an appellant's argument as to an alleged error. See Kremer v. Cox
(1996), 114 Ohio App.3d 41, 60.
 {¶ 46} We may "disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required by App.R. 16(A)." App.R. 12(A)(2). Here, Father cites no legal authority in support of his contention that the trial court erred in ordering him to pay Mother an additional $350. Accordingly, we decline to address Father's fourth assignment of error.
 VI. {¶ 47} In his fifth assignment of error, Father contends that the trial court erred by failing to strike the magistrate's September 20, 2004 decision from the record and reinstate the magistrate's July 8, 2004 decision. He argues that the magistrate improperly considered Mother's motion for reconsideration because there is no basis in law for a magistrate to rescind a decision upon such a motion. We disagree.
 {¶ 48} We have previously recognized that, pursuant to Civ.R. 53(E)(4)(a), magistrate's decisions on referred matters are not effective until they are adopted by the trial court. Mahlerweinv. Mahlerwein, 160 Ohio App.3d 564, 2005-Ohio-1835, at ¶ 20. Therefore, a magistrate's decision remains interlocutory until the trial court adopts it. Id. Interlocutory orders are subject to change and may be reconsidered upon the court's own motion or that of a party. Id. citing Pitts v. Dept. of Transp. (1981),67 Ohio St.2d 378, fn. 1. Therefore, we cannot say that the magistrate abused his discretion in changing his decision before it became a final order of the court. Accordingly, we overrule Father's fifth assignment of error.
 VII. {¶ 49} In his sixth assignment of error, Father contends that the trial court erred in considering and ruling upon Mother's untimely objections to the Magistrate's decision. Father argues that, pursuant to Civ.R. 53(E)(3)(a), Mother's objections were due not later than ten days after he filed his objections. Because he filed his objections on September 28, 2004 and Mother did not file her objections until October 12, 2004, Father argues that Mother's objections were not timely.
 {¶ 50} Civ.R. 53(E)(3)(a) provides, in relevant part: "Within fourteen days of the filing of a magistrate's decision, a party may file written objections to the magistrate's decision. If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed." Mother filed her objections fourteen days after Father filed his objections.
 {¶ 51} Mother contends that her objections were timely filed because Civ.R. 6(E) extended her time for filing objections for an additional three days, or until Monday, October 11, 2004. She asserts that, because the deadline fell on the Columbus Day holiday, the deadline became Tuesday, October 12, 2004. We disagree.
 {¶ 52} Civ.R. 6(E) provides: "Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon him and the notice or paper is served upon him by mail, three days shall be added to the prescribed period." Here, the event that triggered the period for filing Mother's objections was not "the service of a notice or other paper" as provided in Civ.R. 6(E), but the "filing" of Father's objections. We have previously held that the three day mail rule of Civ.R. 6(E) does not extend the time for filing objections to a magistrate's decision. Clemons v. Clemons, Athens App. 03CA52003,2003-Ohio-6210, at ¶ 5, citing Willman v. Cole, Adams App. No. 01CA725, 2002-Ohio-3596; Duganitz v. Ohio Adult Parole Auth.
(2001), 92 Ohio St.3d 556, 557; Pulfer v. Pulfer (1996),110 Ohio App.3d 90, 92; Abate v. Abate (Mar. 29, 2000), Summit App. No. 19560; McDonald Co. Securities, Inc. v. Field (Aug. 8, 1998), Montgomery App. No. 16916. Thus, Father is correct in his assertion that Mother did not timely file her objections.
 {¶ 53} However, we note that Civ.R. 53(E)(4)(b) provides that in ruling upon any objections: "[t]he court may adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter." Mother's second and third objections to the magistrate's decision note that the magistrate failed to address: (1) the calculation of Mother's equity in the marital residence; and (2) issue of whether Father was in contempt for his failure to pay Mother her share of the equity in the marital residence and a portion of the income tax refund. A consideration of these issues was necessary for the court to fully dispose of all of the pending motions, but the magistrate's decision failed to address them. Moreover, Father's own objection to the magistrate's recommendation that he pay Mother $50 per month for his failure to timely pay Mother her share of the equity and the income tax refund also brought these issues to the trial court's attention. Therefore, we conclude that any error in considering Mother's untimely objections was harmless. Accordingly, we overrule Father's sixth assignment of error.
 VIII. {¶ 54} In conclusion, we overrule Father's first, fifth and sixth assignments of error. We sustain his second assignment of error, in part, and his third assignment of error. Additionally, we decline to address his fourth assignment of error. Accordingly, we affirm the trial court's judgment in part, reverse it in part, and remand this cause for further proceedings consistent with this opinion.
AFFIRMED IN PART, REVERSED IN PART, AND CAUSE REMANDED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART AND REVERSED IN PART and the cause remanded to the trial court for further proceedings consistent with this opinion and that costs herein be taxed equally between the parties.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J.: Concurs in Judgment and Opinion.
McFarland, J.: Concurs in Judgment Only as to Assignments of Error I, II, III and V; Dissents as to Assignments of Error IV and VI.
[1] It appears to this court that neither the parties' nor their counsel understood the trial court's original visitation order. The parties' testimony and legal arguments acknowledge that, under the decree, Mother consistently exercised her visitation from Tuesday morning through Friday morning. However, we understand the trial court's original visitation order to be that Mother exercise visitation Monday to Thursday the first week, Tuesday to Friday the second week, Wednesday to Saturday the third week, etc., in a progression, rather than retaining a static Tuesday to Friday schedule.
[2] In its judgment entry, the trial court refers to Madison's three siblings as her "step-brother and sisters". However, the record reflects that the children all share a common mother, thus making them half-siblings.
[3] Although the trial court stated that the value should be as of the date Mother vacated the marital residence, we note that the court actually calculated the payoff figure as of the date of the final divorce hearing. R.C. 3105.171(A)(3), defines marital property as all the property acquired by the spouses during the marriage, except separate property. R.C. 3105.171(A)(2)(a) defines "during the marriage" to mean, except as set forth in R.C. 3105.171(A)(2)(b), the period of time from the date of the marriage through the date of the final hearing. Therefore, the valuation date for marital property is generally the date of the final hearing. However, where a trial court determines that the use of either or both of those dates would be inequitable, then the court may utilize alternative valuation dates. R.C.3105.171(A)(2)(b); Berish v. Berish (1982), 69 Ohio St.2d 318,320. Accordingly, we find no error in the trial court's calculation of the mortgage payoff.
[4] Father claims that he owed $692.41 more than the trial court found was due on the mortgage as of the date of the property valuation.