DECISION AND JUDGMENT ENTRY
{¶ 1} When Delbart Cisco and Deanna Cisco (nka Syrus) divorced in 1995, the trial court found that Delbert had a retirement plan valued at $17,589.81. In the final divorce decree, the court awarded Deanna "one-half of this amount" to be distributed in accordance with a Qualified Domestic Relations Order ("QDRO"). Nearly 12 years later, Deanna disputed the amount of this award, claiming that an ambiguity existed between the decree and the QDRO. However, Delbart contends that the unambiguous language in the divorce decree provides that Deanna is simply entitled to one-half of $17,589.81 as her share of the value of his retirement plan. Thus, he argues that the trial court lacked jurisdiction to modify the property division in the decree.
 {¶ 2} We conclude that the language in the divorce decree concerning the division of Delbart's retirement plan is unambiguous and that it entitles Deanna to receive only a sum certain amount of that plan, i.e. one-half of $17,589.81. Therefore, *Page 2 
the trial court does not have jurisdiction to modify this award. However, because the judgment from which Delbart appeals is self-contradictory, we cannot ascertain whether the trial court improperly modified the decree or, alternatively, simply sought to enforce it as written, by vacating the QDRO and issuing a Division of Property Order ("DOPO") in its place. Without being able to ascertain the result dictated by the trial court's judgment, we cannot engage in a meaningful review of it. Accordingly, we remand this matter for further clarification. And because this decision renders premature Delbart's contention that the trial court abused its discretion by including certain information in the DOPO without an evidentiary hearing, we need not address it at this time.
 I. Facts {¶ 3} When the parties divorced in 1995, the final decree of divorce awarded Deanna a portion of Delbart's retirement plan and stated:
 The Court finds that [Delbart] has retirement through Public Employees' Retirement System and finds that the amount of retirement is $17,589.81. [Deanna] is entitled to one-half of this amount which shall be distributed in accordance with the Qualified Domestic Relations Order attached hereto and marked "Exhibit B."
Neither party appealed the trial court's judgment.
 {¶ 4} At some point, the parties learned that the Public Employees' Retirement System ("PERS") is not subject to QDROs under Ohio law. However, PERS became subject to DOPOs in 2002. It appears that the parties cooperated in obtaining a DOPO from the trial court in July 2006. After PERS rejected the DOPO for failure to comply with various statutory requirements, Deanna filed a motion to reform the QDRO.
 {¶ 5} In her motion, Deanna claimed that she was entitled to a greater share of Delbart's retirement plan than the decree awarded. According to the decree, Delbart's *Page 3 
retirement plan totaled $17,589.81, and Deanna is entitled to "one-half this amount." However, a provision in the QDRO states that she is "entitled to receive one-half of all retirement benefits that [Delbart] shall be entitled to receive under the Plan[.]" Thus, the QDRO awarded her a greater share of Delbart's retirement plan than the decree did. Deanna argued that the trial court erroneously valued Delbart's retirement plan in the decree because the court failed to account for the matching contribution of his employer.
 {¶ 6} Deanna requested that the court resolve this conflict between the decree and QDRO by issuing a DOPO granting her one-half of all retirement benefits Delbart earned during their marriage. In response, Delbart argued that the decree unambiguously awarded Deanna a portion of his retirement benefits in the amount of one-half of $17,589.81. Therefore, he concludes the court lacked jurisdiction to modify the amount of her award.
 {¶ 7} In its judgment entry, the court made several findings of facts and conclusions of law. The court found that the decree and QDRO "clearly appear to be designed to equally divide, one half each, the retirement, of [Delbart], as was earned up to the time of the parties [sic] divorce." It also found the QDRO did "not contain the required dollar amount to be distributed," and the specific dollar amount in the decree was "simply not one-half of the amount earned by [Delbart]" at the time of the divorce because it did not account for the matching contribution of his employer. The court concluded it had jurisdiction to interpret the decree and the conflict between the decree and the QDRO because of the erroneous calculation in the decree.
 {¶ 8} The trial court found that "it was, in fact, the intention of the Court to grant *Page 4 
[Deanna] one-half of the entire amount earned by [Delbart], throughout his employment to [the time of the divorce]." But in the "Findings and Orders" section of the court's entry, the trial court vacated the QDRO and stated:
 The Court does further FIND AND ORDER that the Ohio Public Employees['] Retirement System shall abide by and be bound by the "DIVISION OF PROPERTY ORDER" filed in concert with this order so as to allow [Deanna] to be awarded one-half of the $17,589.81, which was one-half of the retirement benefits garnered and entirely earned during coverture under the Public Employees['] Retirement Plan held by [Delbart] at the time of the parties Divorce, in keeping with the previous order of the Court, and that she receive the same in compliance with said Division of Property Order filed herewith.
Then the court issued a DOPO which appears to award Deanna 50% of a fraction of the value of Delbart's retirement plan, as valued at the time he elects to receive retirement benefits.[1] After the court issued its judgment entry and a second DOPO, Delbart filed this appeal.
 II. Assignments of Error {¶ 9} Delbart assigns the following errors for our review:
 THE TRIAL COURT ERRED BY ASSUMING JURISDICTION OF THIS CASE WHERE IT LACKED SUBJECT MATTER JURISDICTION.
 THE TRIAL COURT ERRED WHERE IT FOUND AN AMBIGUITY EXISTED BETWEEN THE QUALIFIED DOMESTIC RELATIONS ORDER (hereinafter QDRO) AND THE FINAL DECREE OF DIVORCE WHERE THE QDRO IS MERELY AN ORDER IN AID OF EXECUTION OF THE DECREE OF DIVORCE AND NO AMBIGUITY EXISTS IN THE DECREE OF DIVORCE.
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT ENTERED A DIVISION OF PROPERTY ORDER SETTING FORTH THEREIN FACTUAL INFORMATION WITHOUT HOLDING AN EVIDENTIARY HEARING. *Page 5 
 III. Subject Matter Jurisdiction {¶ 10} In his first assignment of error, Delbart contends that the trial court lacked subject matter jurisdiction to modify the divorce decree because it unambiguously values his retirement plan at $17,589.81 and awards Deanna "one-half of this amount." In his second assignment of error, Delbart expounds on his argument that the divorce decree contains no ambiguity. Accordingly, we address these assignments of error together.
 {¶ 11} Once a trial court has made an equitable property division, it has no jurisdiction to modify its decision. Pierron v. Pierron, Scioto App. Nos. 07CA3153 and 07CA3159, 2008-Ohio-1286, at ¶ 7, citing R.C. 3105.171(I); Knapp v. Knapp, Lawrence App. No. 05CA2, 2005-Ohio-7105, at ¶ 40. However, the court does retain jurisdiction to "clarify and construe its original property division so as to effectuate its judgment." Knapp at ¶ 40, quoting McKinley v. McKinley (June 27, 2000), Athens App. No. 99CA52, 2000 WL 897994, in turn, quoting Redding v.Redding (Dec. 20, 1999), Clinton App. No. CA99-06-015, 1999 WL 1238834. While we have recognized that the trial court has broad discretion in clarifying the terms of its previous decree, we have also held that "a court order purporting to clarify the prior judgment may not vary from, enlarge, or diminish the relief embodied in the final decree." Id. "In essence, a court may construe an ambiguous decree, but it must enforce an unambiguous one as it is written." Pierron at ¶ 7, citing Parsons v.Parsons (Aug. 15, 1997), Jackson App. No. 96CA791, 1997 WL 473675.
 {¶ 12} "[T]he initial determination of whether an ambiguity exists presents an abstract legal question, which we review on a de novo basis." Id. at ¶ 8. When *Page 6 
confronted with an allegation of ambiguity, "a court is to objectively and thoroughly examine the writing to attempt to ascertain its meaning."State v. Porterfield, 106 Ohio St.3d 5, 2005-Ohio-3095, 829 N.E.2d 690, at ¶ 11, citing Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216,2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 11. "Only when a definitive meaning proves elusive should rules for construing ambiguous language be employed." Id.
 {¶ 13} If we determine that an ambiguity exists, we afford the trial court discretion to clarify the ambiguity. Pierron at ¶ 8. But where no ambiguity exists, both the trial court and this court must apply the decree as it is written, i.e. as a matter of law. Id., citingStewart v. Stewart (Dec. 22, 1992), Ross App. No. 92CA1885,1992 WL 388546, in turn, citing Latina v. Woodpath Dev. Co. (1991),57 Ohio St.3d 212, 214, 567 N.E.2d 262.
 {¶ 14} In the divorce decree, the trial court found that Delbart had earned retirement benefits through PERS in the amount of $17,589.81. The decree provides that Deanna "is entitled to one-half of this amount." It does not award her any additional employer contributions, interest, dividends, earnings, or increases in the value of her share that accrue after the divorce. Thus, the decree unambiguously awards Deanna exactly one-half of $17,589.81 as her share of Delbart's retirement benefits.
 {¶ 15} The trial court did not find this provision ambiguous. Therefore, it should have simply enforced the decree as it was written. Instead, the court analyzed the provisions of the QDRO and determined that they conflicted with the decree, creating an ambiguity for the court to interpret.
 {¶ 16} A QDRO is an order "which creates or recognizes the existence of an *Page 7 
alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan." Wilson v. Wilson, 116 Ohio St.3d 268,2007-Ohio-6056, 878 N.E.2d 16, at ¶ 6, quoting Employee Retirement Income Security Act of 1974, Section 1056(d)(3)(B)(i)(I), Title 29, U.S. Code and Section 414(p)(1)(A)(i), Title 26, U.S. Code. A QDRO "implements a trial court's decision of how a pension is to be divided incident to divorce[.]" Id. at ¶ 7. A trial court may not enter a QDRO that "var[ies] from, enlarge[s], or diminish[es] the relief embodied in the final decree." Pierron at ¶ 15, quoting Knapp at ¶ 40, and citingMcGeorge v. McGeorge (May 22, 2001), Franklin App. No. 00AP-1151,2001 WL 537037.
 {¶ 17} The QDRO in this case contains a provision that Deanna "shall be entitled to receive one-half of all retirement benefits that [Delbart] shall be entitled to receive under the [PERS] Plan[.]" In its Findings of Fact and Conclusions of Law section of the judgment entry, the trial court determined that this provision of the QDRO conflicted with the divorce decree — the amount awarded Deanna in the QDRO, i.e. "one-half of all retirement benefits," exceeded the amount actually awarded in the decree, i.e. one-half of $17,589.81. And, the court accepted Deanna's contention that it erroneously valued Delbart's retirement benefits at $17,589.81 in the divorce decree because it failed to include the amount of his employer's contribution. The trial court concluded that it intended to award Deanna "one-half of the entire amount earned by [Delbart], throughout his employment to [the time of the divorce]."
 {¶ 18} However, the "Findings and Orders" section of the trial court's judgment contradicts the Findings of Fact and Conclusions of Law section of the same judgment. *Page 8 
In the Findings and Orders section, the court found that it properly valued Delbart's total retirement benefits in the decree at $17,589.81, and ordered PERS to distribute one-half of that amount to Deanna in accordance with a DOPO. Thus, the court appears to award Deanna the same amount of Delbart's retirement benefits that she was entitled to under the decree.
 {¶ 19} Because of this internal contradiction in the judgment entry, we cannot determine whether the trial court improperly modified the divorce decree. The trial court may have intended to modify the unambiguous terms of the decree and award Deanna an amount other than one-half of $17,589.81, a modification it lacked jurisdiction to make. On the other hand, the trial court may have realized that even if the QDRO contradicted the decree, a QDRO cannot "vary from, enlarge, or diminish the relief embodied in the final decree."[2] Thus, the court correctly intended to leave the original property division intact and issued the second DOPO in an effort to enforce the decree as written, i.e. to award Deanna exactly one-half of $17,589.81. If this was the court's intention, we note that the second DOPO appears to award Deanna a greater amount than the decree would allow.
 {¶ 20} We refuse to speculate about the result the trial court intended to reach. Because the court's judgment entry does not allow for meaningful appellate review, we remand this matter for clarification.[3]
 {¶ 21} Delbart's third assignment of error challenges the court's inclusion of certain information in the second DOPO without an evidentiary hearing. However, since *Page 9 
we have remanded this matter for clarification of the court's judgment, we need not address this assignment of error at this time. Accordingly, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion.
 JUDGMENT REVERSED AND CAUSE REMANDED. *Page 10 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT IS REVERSED and that the CAUSE IS REMANDED. Appellee shall pay the costs.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Gallia County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J. Abele, J.: Concur in Judgment and Opinion.
[1] PERS also rejected this DOPO, finding that it incorrectly calculated the numerator of the fraction, i.e. the number of years Delbart was both married to Deanna and a member of PERS.
[2] If Deanna wanted to challenge the amount of Delbart's retirement plan the trial court awarded her in the decree, she should have filed a direct appeal or a Civ. R. 60(B) motion for relief from judgment.
[3] On remand, we advise the trial court to instruct the parties to contact PERS before the court issues a new DOPO to ensure that the DOPO will meet statutory requirements and entitle Deanna to the correct amount of Delbart's retirement plan. *Page 1