[Cite as *Casner v. Casner*, 2018-Ohio-5078.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| KIMBERLY L. CASNER | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 18-CA-48 |
| TROY B. CASNER | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:        Civil appeal from the Licking County Court
of Common Pleas, Domestic Relations
Division, Case No. 14 DR 1453

JUDGMENT:        Reversed and Remanded

DATE OF JUDGMENT ENTRY:        December 13, 2018

APPEARANCES:

For Plaintiff-Appellee        For Defendant-Appellant

JODELLE D'AMICO        COLLIN THOMAS
7110 E. Livingston Avenue        492 South High Street, Suite 200
Reynoldsburg, OH 43068        Columbus, OH 43215

*Gwin, P.J.*

{¶1} Appellant appeals the May 17, 2018 judgment entry of the Licking County Court of Common Pleas, Domestic Relations Division, denying his motion to amend.

*Facts & Procedural History*

{¶2} Appellant Troy Casner and appellee Kimberly Casner were married on September 19, 1987. Appellee filed a complaint for divorce. The trial court issued an agreed judgment entry of divorce on August 27, 2015, approving the parties' separation agreement and incorporating the separation agreement into the judgment entry and decree of divorce. The separation agreement addresses appellant's pension plan with Ohio Police & Fire ("OPF") and provides as follows:

Husband was the owner of a Police & Fire Retirement Account. Wife shall be awarded fifty percent (50%) of the marital portion of this service retirement account as of June 21, 2013. For purposes of valuation and division, the June 21, 2013 date shall be the date by which said service retirement account is evaluated and divided. The prevailing percentages of entitlement that were extant as of that date shall apply to the division herein. Division of this account shall take place by the creation, signing and filing of a qualified Division of Property Order.

{¶3} On May 19, 2016, OPF rejected the first Division of Property Order ("DOPO") submitted by the parties and approved by the trial court. The parties submitted a second DOPO that the trial court entered on June 9, 2016. In August of 2016, OPF accepted the DOPO that was filed on June 9, 2016.

{¶4} On September 15, 2016, the trial court issued a judgment entry terminating appellant's spousal support obligation since the DOPO had been approved and was effective.

{¶5} Appellant filed a motion to amend the DOPO on September 8, 2017. Appellant argued the benefit calculation of the OPF retirement was not made as of June 21, 2013, and OPF failed to properly calculate the benefit as of the date of divorce and instead calculated the amount as of appellant's retirement date. Appellant contended the trial court should approve an Amended DOPO that utilizes the "dollar amount" method of payment to appellee, the alternate payee, in accordance with the separation agreement.

{¶6} The trial court scheduled appellant's motion for hearing on November 17, 2017. Upon agreement of the parties, the hearing was continued. Upon further agreement of the parties, the motion was set for non-oral hearing on March 15, 2018.

{¶7} Appellant filed a brief in support of his motion to amend on February 16, 2018. Appellant argued the language in the separation agreement unambiguously calls for the use of a frozen coverture and the DOPO uses the traditional coverture method to determine the payments to appellee. Attached as an exhibit to appellant's brief is a fax from Becki Gates ("Gates") of OPF to counsel for appellant, including an estimate of the benefit appellant would have qualified for on June 21, 2013 and also a breakdown of how OPF calculated the amount currently paid to appellee based on the June 2016 DOPO. Appellee filed a memorandum in opposition on February 28, 2018. Appellant filed a reply brief on March 9, 2018.

{¶8} The trial court issued a judgment entry denying appellant's motion on May 17, 2018. The trial court stated that any service credit appellant earned while on disability

or after the de facto date of divorce in June of 2013 would be applied to the denominator of the fraction and would not have an impact on the numerator of the fraction, in conformity with the requirements of the DOPO.

{¶9} Appellant appeals the May 17, 2018 judgment entry of the Licking County Court of Common Pleas, Domestic Relations Division, and assigns the following as error:

{¶10} "I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO PROPERLY APPLY THE PARTIES' DE FACTO DATE OF DIVORCE TO THE DIVSION OF DEFENDANT-APPELLANT'S POLICE & FIRE RETIREMENT ACCOUNT AND ABUSED ITS DISCRETION BY ERRONEOUSLY CONCLUDING THAT THE CORRECT CALCULATION WAS APPLIED.

{¶11} "II. THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO PROPERLY CONSTRUE AND APPLY THE CLEAR LANGUAGE OF THE PARTIES' SEPARATION AGREEMENT."

## I. & II.

{¶12} We will consider appellant's assignments of error together as they are interrelated on the issue of the interpretation of the parties' separation agreement and decree of divorce.

{¶13} Once a court has made an equitable property division, the trial court does not have jurisdiction to modify its decision. R.C. 3105.171(I). The trial court, however, retains broad jurisdiction to clarify and construe its original property division so as to effectuate the judgment. *Oberst v. Oberst*, 5th Dist. Fairfield No. 09-CA-54, 2010-Ohio-452; *Knapp v. Knapp*, 4th Dist. Lawrence No. 05CA2, 2005-Ohio-7105.

**{¶14}** Because the divorce decree incorporates an agreed judgment entry and separation agreement, the determination of the above involves the application of the general rules of contract interpretation. Where ambiguity is complained of and where the parties dispute the meaning of clauses in the agreement, it is the duty of the court to examine the contract and determine whether the ambiguity exists. *Id.* If an ambiguity does exist, the court has the duty and the power to clarify and interpret such clauses by considering the intent of the parties as well as the fairness of the agreement. *Id.*; *Houchins v. Houchins*, 5th Dist. Stark No. 2006CA00205, 2007-Ohio-1450. The question of perceived inequity is not relevant to the issue of whether the language of the decree is ambiguous on its face. *Oberst v. Oberst*, 5th Dist. Fairfield No. 09-CA-54, 2010-Ohio-452, citing *Pierron v. Pierron*, 4th Dist. Scioto No. 07CA3153, 07CA3159, 2008-Ohio-1286.

**{¶15}** However, if the terms of the decree are unambiguous, then the court must apply the normal rules of construction. *Id.* The interpretation of the clause is a matter of law and the court must interpret the intent of the parties using only the language employed. *Id.* "[W]hen a term in an agreement is unambiguous, then the words must be given their plain, ordinary and common meaning; however, when the term is not clear, parol evidence is admissible to explain the meaning of the words." *Forstner v. Forstner,* 68 Ohio App.3d 366, 588 N.E.2d 285 (11th Dist. 1990).

**{¶16}** In this case, both parties agree that the clear intent of the parties, as stated in the separation agreement, is to award appellee 50% of appellant's pension as of June 21, 2013. Accordingly, the trial court must enforce the decree as written. However, the parties disagree as to whether the DOPO enforces the decree and separation agreement.

Appellee asserts the DOPO does award appellee 50% of the pension as of June 21, 2013 and does take into consideration the June 21, 2013 date of divorce. Appellant argues the DOPO awards appellee 50% of appellant's pension as of the date of his retirement, not the date of divorce, and that the DOPO impermissibly modifies the separation agreement that requires the use of a frozen coverture and instead utilizes the traditional coverture fraction method.

{¶17} In order to effectuate and enforce the divorce decree's division of pension benefits, the trial court enters an order such as a DOPO. A DOPO is generally issued subsequent to and separate from the divorce decree. *Cameron v. Cameron*, 10th Dist. Franklin No. 12AP-349, 2012-Ohio-6258. "Accordingly, a trial court possesses jurisdiction to adopt a DOPO consistent with its divorce decree, but, absent express reservation of jurisdiction or express consent of the parties, it may not adopt a DOPO that changes the award the decree granted." *Id.* A DOPO is inconsistent with a divorce decree "when it modifies the division of retirement benefits ordered in the decree, and a DOPO modifies a division of retirement benefits when the DOPO varies from, enlarges, or diminishes the award the court ordered in the decree." *Id.*; *Knapp v. Knapp*, 4th Dist. Lawrence No. 05CA2, 2005-Ohio-7105. Where there is an unambiguous direction to award half the value of the pension as of the date of divorce, the "benefits should be calculated according to the benefits as they existed at the time of the divorce because to do otherwise constitutes a modification of the divorce decree itself." *Keller v. Keller*, 5th Dist. Delaware Nos. 18 CAF 01 0008, 18 CAF 01 0009, 18 CAF 01 0010, 2018-Ohio-3141.

{¶18} Accordingly, we must determine whether the DOPO "freezes" the account at its June 21, 2013 value and thus whether the DOPO enforces the unambiguous terms of the separation agreement.

{¶19} Under the "frozen" coverture method, the trial court "freezes" the pension benefits at the amount in the account as of the divorce date. *Id.* In a defined-contribution plan, such as a 401(k), the employee and/or employer contributes to the employee's account and the value of the plan is the account balance. *Thompson v. Thompson*, 196 Ohio App.3d 764, 2011-Ohio-6286, 965 N.E.2d 377 (10th Dist.). The plan account is then "frozen" as of the date of the divorce and the coverture fraction is computed utilizing the ratio of the number of years of employment during the marriage to the total years of employment as of the date of the divorce. *Id.* The resulting sum is the marital portion of the pension. *Id.* The non-participant spouse then receives his or her percentage share of that marital portion. *Id.*

{¶20} In this case, the OPF retirement plan is a defined-benefit plan. This is a pension plan whereby the member's benefit is defined by a plan formula that provides for the payment of a monthly check for life upon the member's retirement. *Id.* Unlike in a defined-contribution plan, the amount that a member contributes to a defined-benefit plan plays no role in the computation of the value of the benefit. *Id.* Rather, the value of the benefit is determined from a formula that utilizes variables such as the member's age, service credit, and highest salary. *Id.*

{¶21} Under the traditional coverture method, the court determines the amount of money due the non-participant spouse by using the value of the pension at retirement to determine the "monthly accrued benefit." *Cameron v. Cameron*, 10th Dist. Franklin No.

12AP-349, 2012-Ohio-6258. The court then multiples this monthly accrued benefit by the traditional coverture fraction, which employs a "ratio of the number of years of employment of the employed spouse during the marriage to the total years of his or her employment" to arrive at the marital portion of the pension benefit. *Id.* The non-participant spouse then receives his or her percentage share of that marital portion. *Id.* By utilizing the traditional coverture method, the non-participant spouse receives any post-divorce increase in the value that is attributable to the non-participant's share. *Id.*

**{¶22}** Under the frozen coverture method, the trial court must "freeze" the pension benefits at the amount in the account as of the date of divorce, calculating the value of the participant spouse's retirement account had he or she retired on the same day the parties divorced, using the then-present base pay and years of service. *Id.* The value of the future monthly benefit is frozen because it does not gain value from years served after the divorce or increases in salaries after the divorce. *Harrington v. Ford*, 10th Dist. Franklin No. 14AP-954, 2015-Ohio-3571.

**{¶23}** In order to divide appellant's OPF pension, the trial court used a statutorily created DOPO form created for the public retirement programs in Ohio. R.C. 3105.90. Pursuant to R.C. 3105.80 and the statutorily created DOPO form, the drafter must select the "method of payment" of how the non-participant spouse (the "alternate payee") is paid per benefit period, as either a dollar amount or a percentage amount. In the "dollar amount" method of payment, the monthly amount that the alternate payee is to receive from the participant's benefit is entered in Paragraph (II)(B)(1)(a). In the "percentage" method of payment, the percentage the alternate payee is to receive is entered in Paragraph (II)(B)(2)(a), and this percentage is applied to the fraction as set forth in (c).

The fraction in (c) consists of a numerator, which is the number of years during which the participant was contributing to the pension fund and married to the alternate payee, and a denominator being the participant's total years of service credit as determined by the public retirement system at the time of the participant elects to take the benefit. Further, in the percentage calculation method, the monthly benefit used to determine the amount paid to the alternate payee is as follows: if the participant is already receiving a monthly benefit at the time the divorce is final, the monthly benefit is the gross monthly benefit as of the date of the divorce; if the participant has applied for but is not yet receiving a monthly benefit, the monthly benefit is the benefit for which the participant is eligible; or if the participant has not yet applied for a benefit, the monthly benefit shall be the benefit calculated at the time the participant elects to take the benefit. In its entry, the trial court stated the DOPO utilizes (C)(3), the monthly benefit calculated at the time the participant elects to take the benefit.

{¶24} As noted by the Tenth District Court of Appeals, whether the "dollar amount" or "percentage" method is used, "determine[s] not only the appropriate division and disbursement of pension fund benefits as they exist as of the divorce date, but also the allocation of future interest accrued on the amount in the pension fund as of the divorce date." *Cameron v. Cameron*, 10th Dist. Franklin No. 12AP-349, 2012-Ohio-6258. The frozen coverture method is the "dollar amount" method on the statutory DOPO form, while the traditional coverture method is the "percentage method" on the DOPO form. *Id.*; *Harrington v. Ford*, 10th Dist. Franklin No. 14AP-954, 2015-Ohio-3571.

{¶25} In this case, whereas the separation agreement unambiguously employs a frozen coverture fraction, the DOPO employs a traditional coverture fraction, as the

denominator of the fraction as set forth in Paragraph (II)(B)(2)(c) includes the total years of appellant's service credit with OPF and is not limited to the years of service credit as of June 21, 2013. Additionally, the DOPO form utilizes the traditional coverture method because the monthly benefit calculation amount in Paragraph (C)(3) is the amount as of appellant's date of retirement, not as of June 21, 2013. The terms of the DOPO are inconsistent with the separation agreement and thus the DOPO improperly modifies the separation agreement and divorce decree.

{¶26} Based on the foregoing, appellant's assignments of error are sustained. The May 17, 2018 judgment entry of the Licking County Court of Common Pleas, Domestic Relations Division, is reversed and remanded with instructions to the trial court to determine appellee's monthly benefit under the frozen coverture method as of June 21, 2013, and enter a DOPO that reflects that monthly amount.

By Gwin, P.J.,

Hoffman, J., and

Baldwin, J., concur