[Cite as *Lepsky v. Lepsky*, 2022-Ohio-4710.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STEVEN LEPSKY | : | JUDGES: |
| | : | |
| | : | Hon. Earle E. Wise, Jr., P.J. |
| Plaintiff-Appellee/Cross-Appellant | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 2021 CA 00155 |
| | : | |
| WENDY LEPSKY | : | |
| | : | |
| | : | |
| Defendant-Appellant/Cross-Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Stark County Court of
                                  Common Pleas, Domestic Relations
                                  Division, Case No. 2020 DR 00799



JUDGMENT:                         AFFIRMED



DATE OF JUDGMENT ENTRY:           December 27, 2022



APPEARANCES:


For Plaintiff-Appellee/Cross-Appellant:          For Defendant-Appellant/Cross-Appellee:

JEFFREY JAKMIDES                                 LAURA L. MILLS
325 E. Main St.                                  PIERCE C. WALKER
Alliance, OH 44601                               101 Central Plaza South, Suite 1200
                                                 Canton, OH 44702

ROSEMARY G. RUBIN
1435 Market Ave., N
Canton, OH 44714

*Delaney, J.*

{¶1} Defendant-Appellant/Cross-Appellee Wendy Lepsky and Plaintiff-Appellee/Cross-Appellant Steven Lepsky appeal the November 23, 2021 judgment entry of the Stark County Court of Common Pleas, Domestic Relations Division.

## PROCEDURAL HISTORY[1]

### First Complaints for Divorce Converted to a Legal Separation

{¶2} Plaintiff-Appellee/Cross-Appellant Steven Lepsky ("Husband") and Defendant-Appellant/Cross-Appellee Wendy Lepsky ("Wife") were married on December 12, 2009. Both Husband and Wife have previous marriages and divorces. No children born as issue of the marriage. Husband and Wife had children from their previous marriages.

{¶3} On July 28, 2015, Husband filed a complaint for divorce against Wife in the Stark County Court of Common Pleas, Domestic Relations Division. On July 30, 2015, Wife filed a complaint for divorce in the same court. The trial court combined the divorce cases for judicial economy.

{¶4} On March 8, 2016, Husband and Wife filed a joint motion to convert their pending divorce actions to a Legal Separation only. The parties averred in the joint motion that they intended to proceed with legal separation as opposed to a divorce. Both parties dismissed their respective divorce pleadings without prejudice. Simultaneous to filing the joint motion to convert, Husband and Wife filed a Separation Agreement with the trial court.

---

[1] For ease of discussion, we will recite the underlying facts of the case within our analysis of each Assignment of Error.

{¶5} On March 15, 2016, the trial court filed a judgment entry consenting to the parties' conversion of the divorce proceedings to a Legal Separation. The matter was set for a hearing on March 25, 2016. On March 29, 2016, the trial court issued a judgment entry granting a legal separation on the grounds of incompatibility. The proposed Separation Agreement was approved, adopted, and incorporated into the March 29, 2016 order.

{¶6} On April 12, 2016, the trial court filed a Decree of Legal Separation wherein the Legal Separation Agreement was approved and incorporated as part of the Decree. The trial court ordered that the parties were legally separated, but still married.

**Husband's Second Complaint for Divorce to an Amended Separation Agreement**

{¶7} Husband filed a complaint for divorce on January 18, 2018. On April 9, 2018, Husband and Wife filed an Agreed Judgment Entry. In the Agreed Judgment Entry, the parties agreed to amend the April 12, 2016 Decree of Legal Separation to include the terms of the amendment. Husband and Wife agreed that neither party would file any legal action for divorce or dissolution before June 1, 2020. If any party filed to dissolve the marriage after June 1, 2020, the trial court would uphold the terms of the Decree of Legal Separation and Amendment to the Separation Agreement and include them in the final Decree of Dissolution. Husband withdrew his complaint for divorce. The parties remained married.

**Husband's Third Complaint for Divorce**

{¶8} On July 11, 2018, Husband filed a complaint for divorce. Wife filed a motion for contempt of the Separation Agreement on September 17, 2018.

{¶9} On October 23, 2018, Husband filed a notice to voluntarily dismiss his complaint for divorce. Wife dismissed her contempt motion. The parties remained married.

### Husband's Fourth Complaint for Divorce

{¶10} On September 1, 2020, Husband filed a complaint for divorce. Wife responded with an answer, counterclaim for divorce, and a third-party complaint against Defendant Jackson Emergency Physicians, LLC.

{¶11} On September 18, 2020, Wife filed a motion to deem the Separation Agreement invalid, to which Husband responded. The trial court held an evidentiary hearing on the motion on November 2, 2020 and December 17, 2020. The sole issue at the evidentiary hearing was the validity of the Legal Separation, Separation Agreement, and Amendment to the Legal Separation Agreement.

{¶12} By judgment entry filed on January 6, 2021, the trial court found the Separation Agreement and the Amendment to the Separation Agreement were valid.

{¶13} Based on the trial court's determination that the Separation Agreement and Amendment to the Separation Agreement were valid, Wife was ordered to pay Husband's reasonable attorney fees to defend against her claim.

{¶14} On May 27, 2021, Wife filed a motion for relief from judgment pursuant to Civ.R. 60(B)(2). She argued that she was entitled to relief from the trial court's January 6, 2021 judgment entry finding the Separation Agreement was valid. Based on newly discovered evidence of Husband and Wife's 2020 marital counseling records, she argued the Separation Agreement and Amendment were void because the parties had reconciled their marriage. Husband responded that Wife could not utilize Civ.R. 60(B) because the

January 6, 2021 judgment entry was an interlocutory order, not a final order. The trial court agreed and denied Wife's Civ.R. 60(B)(2) motion.

{¶15} The final divorce hearing took place on August 23, 2021 and September 21, 2021. On October 13, 2021, the trial court issued its judgment entry, granting the parties a divorce on the grounds of incompatibility. Pursuant to Section 5.8 of the Separation Agreement, the trial court made the provisions of the Separation Agreement part of the Final Decree of Divorce.

{¶16} On October 25, 2021, the trial court issued a nunc pro tunc entry regarding an error in its October 13, 2021 finding of facts.

{¶17} On November 23, 2021, the trial court filed the Final Decree of Divorce. It is from this judgment that Husband and Wife now appeal.

## ASSIGNMENTS OF ERROR

{¶18} Wife raises seven Assignments of Error:

{¶19} "I. THE TRIAL COURT ERRED IN FINDING THAT THE SEPARATION AGREEMENT AND AMENDMENT TO THE SEPARATION ARE VALID.

{¶20} "II. THE TRIAL COURT ERRED IN NOT FINDING FINANCIAL MISCONDUCT ON BEHALF OF THE APPELLEE WHEN HE LIQUIDATED MARITAL FUNDS OF $565,000.00 TO PURCHASE A NEW RESIDENCE THIRTY (30) DAYS BEFORE THE FILING OF DIVORCE.

{¶21} "III. THE TRIAL COURT ERRED IN ADMITTING AND RELYING UPON AN APPRAISAL REPORT WITHOUT THE APPRAISER TESTIFYING AND QUALIFYING IT AS AN AUTHENTIC AND 'BONA FIDE' APPRAISAL.

{¶22} "IV. THE TRIAL COURT ERRED IN NOT FINDING THAT SECTION 2.7 OF THE SEPARATION AGREEMENT INCLUDED ALL ACCOUNTS OF APPELLEE AND HIS COMPANY, JACKSON EMERGENCY PHYSICIANS, AS SIGNIFICANT FUNDS WERE UTILIZED AS PERSONAL FUNDS.

{¶23} "V. THE TRIAL COURT ERRED IN NOT FINDING FINANCIAL MISCONDUCT ON BEHALF OF THE APPELLEE AS HE HAD $700,000.00 DISAPPEAR ON HIS CORPORATE TAX RETURNS DURING 2019 AND 2020.

{¶24} "VI. THE TRIAL COURT ERRED IN ORDERING INCONSISTENT RULINGS ON THE HOUSEHOLD GOODS, AS IN JANUARY THE COURT ISSUED EVERYTHING IN THE MARITAL RESIDENCE BELONGED TO APPELLANT AND THEN AT TRIAL STATED THE PARTIES SHOULD SPLIT THE HOUSEHOLD GOODS WITHOUT ANY SUPPORTING EVIDENCE.

{¶25} "VII. THE TRIAL COURT ERRED IN ORDERING THAT A PASSIVE GROWTH ANALYSIS WAS TO BE CONDUCTED ON THE PARTIES' RETIREMENT ACCOUNT WHEN THE SEPARATION AGREEMENT DOES NOT STATE SUCH PASSIVE GROWTH ANALYSIS."

{¶26} Husband raises two Cross-Assignments of Error:

{¶27} "I. THE TRIAL COURT ERRED IN FAILING TO AWARD ALL ATTORNEY FEES OF THE APPELLEE TO BE PAID BY THE APPELLANT, PURSUANT TO THE TERMS OF THE AMENDMENT TO THE SEPARATION AGREEMENT, WHICH THE COURT FOUND TO BE VALID.

{¶28} "II. THE TRIAL COURT ERRED IN ORDERING APPELLEE'S FIDELITY BROKERAGE ACCOUNT ENDING IN 5898 TO BE DIVIDED BETWEEN THE PARTIES.

AS THE TRIAL COURT CORRECTLY HELD, SECTION 2.5 OF THE SEPARATION AGREEMENT EXPLICITLY GIVES THE JACKSON EMERGENCY PHYSICIANS BUSINESS TO APPELLEE FREE AND CLEAR OF ANY CLAIM BY APPELLANT. THE MONEY DEPOSITED INTO APPELLEE'S FIDELITY BROKERAGE ACCOUNT ENDING IN 5898 CAME EXCLUSIVELY FROM THE EARNINGS OF JACKSON EMERGENCY PHYSICIANS, AND AS SUCH IT SHOULD HAVE BEEN DEEMED SEPARATE PROPERTY."

## ANALYSIS

### I. Validity of the Separation Agreement and Amendment

{¶29} In Wife's first Assignment of Error, she contends the trial court erred when it found the Separation Agreement and amendment to the Separation Agreement (hereinafter both documents referred to as "Separation Agreement") were valid. We disagree.

### Decree of Legal Separation

{¶30} On April 12, 2016, the trial court filed a Decree of Legal Separation wherein a Separation Agreement prepared by the parties was approved and incorporated as part of the Decree. On April 9, 2018, Husband and Wife filed an Agreed Judgment Entry where they agreed to amend the April 12, 2016 Decree of Legal Separation to include the terms of the amendment. On September 17, 2018, Wife filed a motion for contempt in Husband's third divorce action where she argued that Husband had violated the Separation Agreement. Upon the dismissal of Husband's complaint for divorce, Wife dismissed her motion for contempt.

**Wife's Motion to Invalidate Separation Agreement**

{¶31} Husband filed the divorce action at issue in the present case on September 1, 2020. On September 18, 2021, Wife filed a motion to deem the Separation Agreement invalid as a matter of law because Husband and Wife reconciled in April 2016. She contended that since April 2016, Husband was in violation of the Separation Agreement, which demonstrated the parties were reconciled, not separated. She specified in her motion the terms of the Separation Agreement that Husband was allegedly violating:

**Article I Separation**

Each party shall continue to live separate and apart from the other, and that each shall go his and her own way without direction, control or molestation from the other, and each further agrees not to annoy or interfere with the other in any manner whatsoever.

* * *

**Article II Provisions Relating to Division of Property**

**2.1 Real Estate**

**A. [Shady Stone Residence]**

Wife will upon execution of this agreement continue to have exclusive use and occupancy of the real property located at [Shady Stone residence].

* * * Husband will further pay the real estate taxes, insurance, and utilities for said real property. Husband and Wife agree to each pay fifty per cent of any necessary house repairs and upkeep.

* * *

**Section 2.2 – Automobiles; Boat; Motorcycle**

Wife will retain the 2010 Toyota Sequoia, free and clear from any claim by Husband and will indemnify and hold Husband harmless from any liability thereon. Husband to transfer into wife's name the title to the 2010 Toyota Sequoia to wife upon execution of this agreement.

* * *

**Section 2.3 – Household Goods**

Husband and Wife will each retain any items of household furniture and furnishings which he or she brought to the marriage and the balance of household furniture and furnishings in the real property located at [Shady Stone residence] will be equally divided between Husband and Wife.

* * *

**Section 2.4 – Bank Accounts, Brokerage Accounts**

Wife will retain as her property, free and clear from any claim by Husband, her PNC checking and savings account, Wife's individual Fidelity accounts as well as all custodial accounts for [children], and First Merit account in the name of MedAdmin Service, LLC.

Husband will retain as his property, free and clear from any claim by Wife, all accounts at First Merit Bank, including, but not limited to, his First Merit checking account, First Merit checking accounts in the name of Jackson Emergency Physicians Ltd., First Merit Health Savings account, Husband's Individual Fidelity  account and custodial accounts, Fidelity college accounts, and 529 accounts for [children].

\* \* \*

**Section 2.6 Retirement Benefits**

The parties shall equally divide only the marital portion of the Wife's MedAdmin Service LLC 401K and only the marital portion of the Husband's Jackson Emergency Physicians LLC 401K by a Qualified Domestic Relations Order, asset to be determined by QDRO Consultants, Inc. based upon the following formula: \* \* \*

\* \* \*

**Section 2.7 – Cash to Wife**

Husband will pay to Wife as division of property the sum of Fifty Thousand Dollars ($50,000) within thirty (30) days of a subsequent decree of divorce being filed. This sum in non modifiable [sic] and is considered total payment to Wife in lieu of a division of bank accounts for the period from December 12, 2009 through (1) year from the date of signing of this agreement.

\* \* \*

**Section 2.8 Insurances**

\* \* \*

The parties shall continue to maintain health insurance coverage for both parties and their children who are covered under their current health care policy. Husband shall continue to pay for and maintain health insurance for both parties and their minor children until such time as a final decree of divorce is granted. \* \* \*

**Section 2.9 Tax Filings**

* * * To the extent that there is any tax liability associated with their 2015 Federal, State and Local Income Tax Returns, the parties shall equally (50-50) pay for such tax liabilities and assessments, and each party shall save, indemnify and hold the other party harmless from his/her share of such liability/assessment. * * *

**Article III Spousal Support**

Husband will continue to abide by the temporary support agreement and pay to Wife the amount set forth in said agreement of Five Thousand Dollars ($5,000.00) per month on or before the 20th of each month. * * *

**Debts and Non Use of Other's Credit**

**Section 4.1 – Non Use of Other's Credit**

Neither Husband nor Wife shall hereafter incur any debts, obligations or charges upon the credit of the other, and each shall indemnify and hold the other absolutely harmless from any such debts or obligations so charged or otherwise incurred.

{¶32} Wife argued Husband violated the April 9, 2018 amendment to the Separation Agreement as to these terms:

* * *

2. The parties agree that Husband shall continue to pay to wife monthly support in the amount of $5,000.00 each month on or before the 20th day of the month.

a. The parties agree that monthly support payments paid to wife shall end on June 1, 2020.

* * *

7. The parties agree that neither shall file any legal action for Divorce or Dissolution in this matter before June 1, 2020.

{¶33} Wife further contended in her motion to invalidate the Separation Agreement that Husband had engaged in financial misconduct.

{¶34} Husband filed a motion to dismiss Wife's motion to invalidate the Separation Agreement. He denied the parties had reconciled and that he had complied with the terms of the Separation Agreement in obtaining a separate residence, payment of spousal support, and maintenance of the Shady Stone residence. He further contended that Wife had multiple opportunities to contest the validity of the Separation Agreement or terminate the Separation Agreement prior to September 18, 2021, either by motions for relief from judgment or appeal, and in failing to do so she had waived her arguments.

**Evidentiary Hearing**

{¶35} The trial court set the matter for an evidentiary hearing on November 2, 2020 and December 17, 2020. The hearings were held over Zoom due to the COVID pandemic and that the parties contracted COVID during the proceedings.[2] The following evidence was adduced at the hearings.

{¶36} Husband testified that Wife presented the Separation Agreement to him. Wife stated that Husband presented the Separation Agreement to her. Husband and

_____

[2] Due to the matter being heard over Zoom, the Court Reporter noted the audio pickup was poor due to poor microphone quality. (T. 4). Portions of the witnesses' testimony are indiscernible. The parties did not file an App.R. 9 statement.

Wife's counsel denied drafting the Separation Agreement. Wife stated the Separation Agreement was necessary because Husband's children did not like Wife. The terms of the Separation Agreement were written so that once his children were emancipated, they could live as a married couple again. Husband testified that he agreed to the legal separation instead of divorce because he believed Wife was interfering with his employment; when he stopped the divorce proceedings, the employment harassment stopped. Wife testified that she read and signed the Separation Agreement. She was represented by counsel at all times. When the Separation Agreement was originally filed, Wife said she was vacationing with Husband in New Orleans.

{¶37} Husband testified on cross examination that his current residence was located in Canton, Ohio, which he had recently purchased. From 2014 to the purchase of his new residence, he had resided in a rented condominium. Husband's children would not come to the Shady Stone residence, so Wife said Husband purchased the separate residence for his children. Husband agreed he had clothes and shoes in the master bedroom closet of the Shady Stone residence, but he left those items there when he quickly left Wife in 2015. Wife testified that she and Husband continued to live together at the Shady Stone residence, where Husband would sometimes come home after work and change clothes, eat meals with her, and take walks with her and their dog, Winston.

{¶38} Husband purchased Wife a $15,000 diamond ring in August 2019. Wife stated she and Husband designed the ring together and it was called an "anniversary band." In November 2019, Husband purchased Omega watches for Wife and himself in the amount of $19,000. In 2019, Husband purchased Wife an Acura and he used the

Toyota Sequoia to drive to his employment in Cleveland. He purchased Wife a player piano and furniture for the Shady Stone residence.

{¶39} Wife and Husband texted each other multiple times a day. Husband testified that it was Wife texting him and he was just responding. Some of the texts involved looking at real estate, which Husband said he enjoyed doing with Wife. Wife testified they were looking to purchase a new home together; Husband believed he was helping Wife look for her new residence. Two friends testified that they observed Husband and Wife attending events together. In 2019, Husband attended a school trip to Europe with Wife and Wife's child, where Husband testified that he, as an emergency room physician, served as the school physician and got an expenses-paid trip to Europe.

{¶40} Husband testified that he paid Wife $5,000 per month by check per the terms of the Separation Agreement. Wife testified the $5,000 per month was not spousal support but for household expenses. In April 2018, Husband wrote Wife a check for $50,000, where he expected her to withdraw her monthly $5,000 for three months. Husband asked Wife to return $35,000, which she did not. Husband then did not pay Wife three months of spousal support based on the $50,000 check.

{¶41} Wife testified that she and Husband opened up a joint banking account in 2020. When explaining how she opened the account, she said that she applied for the Huntington bank account online and it did not require signature cards from the account holders. Husband denied opening a joint bank account with Wife.

{¶42} The trial court issued its judgment on January 6, 2021. Based on the facts and the credibility of the witnesses, the trial court determined there was no reconciliation between Husband and Wife. The parties maintained separate residences, they did not

purchase real estate together, Husband paid Wife $5,000 per month and provided insurance and assets according to the terms of the Separation Agreement, and Husband and Wife did not comingle assets. That Husband and Wife deviated from the Separation Agreement by their actions, such as Husband's purchase of expensive gifts for Wife, Husband leaving clothes at Wife's residence, and Husband looking at real estate with Wife for Wife's new residence, the trial court found the deviances were to Wife's benefit and insufficient to invalidate the Separation Agreement. Further, throughout the multiple court proceedings and final orders, Wife was represented by counsel, she read and signed the Separation Agreement, and she never filed a Civ.R. 60(B) motion, an appeal, or a motion to terminate the separation due to reconciliation.

{¶43} After the trial court denied Wife's motion to declare the Separation Agreement invalid, Wife filed a Civ.R. 60(B)(2) motion based on newly discovered evidence. She contended that after the hearing, Wife received the response to a discovery request regarding Husband and Wife's marriage counseling. The records showed that Husband and Wife attended 21 counseling sessions from January 24, 2020 to August 26, 2020. Wife contended the counseling records, and the content thereof, were evidence of the parties' reconciliation. The trial court denied Wife's motion for Civ.R. 60(B)(2) because the October 13, 2021 judgment entry was an interlocutory order.

{¶44} In the November 23, 2021, Final Decree of Divorce, the trial court incorporated the terms of Separation Agreement that Wife argues on appeal is invalid.

**The Decree of Legal Separation is No Longer a Contract**

{¶45} In her first Assignment of Error, Wife contends the facts establish that Husband and Wife reconciled after they entered into the Separation Agreement. She

argues the parties' reconciliation rescinds the Separation Agreement. In support of her argument, she cites this Court to *Schaum v. Schaum*, 2nd Dist. No. CA 999, 1978 WL 216519 (Nov. 17, 1978), that held where parties to a separation agreement have not performed any aspect of the agreement, but rather have continued to live together as spouses, the separation agreement is invalid.

{¶46} In *Birr v. Birr*, 2012-Ohio-187, 969 N.E.2d 312 (6th Dist.), the Sixth District Court of Appeals was presented with a similar factual scenario as that in the present case. The appellant and appellee entered into a separation agreement and shortly thereafter, filed a complaint for legal separation. *Id.* at ¶ 15. The trial court granted the legal separation and incorporated the parties' agreement into the order. *Id.*

{¶47} The parties disputed their motivations for obtaining the legal separation. The appellant argued they never intended to separate but were attempting to shield his assets from a potential liability. The appellee stated it was always her desire to separate. *Id.* at ¶ 16. In either event, following the legal separation, the parties continued to act as husband and wife by residing together, maintaining a physical relationship, and commingling assets. *Id.* at ¶ 17.

{¶48} The appellee filed a complaint for divorce and requested the trial court to enforce the terms of the separation agreement as incorporated into the order of legal separation. The appellant filed a motion for relief from judgment and a motion to set aside the separation agreement. The trial court denied the Civ.R. 60(B) motion and entered a final decree of divorce. *Id.* at ¶ 20-21.

{¶49} On appeal, the appellant argued the trial court erred in denying his motion under Civ.R. 60(B). He contended under Civ.R. 60(B)(4) and (5), it was no longer

equitable for the trial court to enforce the separation agreement because the parties' reconciliation rescinded the separation agreement. *Id.* at ¶ 30. The appellant relied upon *Schaum v. Schaum* in support of his argument. The Sixth District in *Birr v. Birr* rejected the appellant's reliance on *Schaum* based on the different procedural posture of the *Birr* case:

> Appellant cites *Lucas v. Lucas*, 26 Ohio Law Abs. 664 (2d Dist.1938), and *Schaum v. Schaum*, 2d Dist. No. CA 999, 1978 WL 216519 (Nov. 17, 1978), to support his proposition that where parties to a separation agreement have not performed any aspect of the agreement, but rather have continued to live together as man and wife, the separation agreement is invalid. Appellant's assertion is ostensibly one that is based in contract law—i.e., that the parties entered into the separation agreement, but by continuing to cohabitate and live as husband and wife, they demonstrated their intent to rescind it. However, the cases relied upon by appellant are distinguishable from the present situation in that, here, the agreement was incorporated into an order of legal separation. Thus, we find that *Lucas* and *Schaum* are not controlling.

*Birr*, 2012-Ohio-187, ¶ 30.

{¶50} The court found that "a separation agreement of the parties loses its nature as a contract the moment it is adopted by the court and incorporated into a decree of divorce." *Id.* at ¶ 31 citing *Lambert v. Lambert*, 6th Dist. Fulton No. F-05-002, 2005-Ohio-6145, ¶ 11. The court held that because the appellant and appellee's order of legal separation "incorporated the parties' agreement, the agreement is no longer subject to

the contract-law remedy of rescission via a demonstration that the parties have reconciled." *Birr v. Birr*, 6th Dist. No. F-10-021, 2012-Ohio-187, 969 N.E.2d 312, 2012 WL 171968, ¶ 32. *See Wolfe v. Wolfe*, 46 Ohio St.2d 399, 417, 350 N.E.2d 413, 425 (1976) ("This court has held that where an agreement is incorporated in a decree, the agreement is superseded by the decree * * *).

{¶51} The facts of the present case are almost identical to those in *Birr*. In this case, on March 8, 2016, Husband and Wife jointly filed a motion to convert their divorce action to a legal separation. The parties presented the trial court with the Separation Agreement, which the trial court accepted as fair and equitable, and by judgment entry filed April 12, 2016, was incorporated into a Decree of Legal Separation. The amendment to the Separation Agreement was likewise determined to be fair and equitable and by agreed judgment entry on April 9, 2018, the parties agreed to amend the April 12, 2016 Decree of Legal Separation to include the terms of the amendment.

{¶52} Wife claims reconciliation rescinds the Separation Agreement, but based on *Birr*, recission is a contract law remedy. *Birr*, 2012-Ohio-187, ¶ 32. As the trial court correctly held, the Separation Agreement is no longer a private contract entered into by the parties but an order of the court. (January 6, 2021 Judgment Entry). Therefore, Civ.R. 60(B) controls. *Id.* Wife's motion argued the Separation Agreement invalid on the basis that the parties had reconciled. While the trial court acknowledged that the Separation Agreement was an order of the court, it considered the evidence to determine if the parties had reconciled. In her brief on appeal, Wife cites this Court to the abuse of discretion standard of review to determine if the trial court erred. An appellate court reviews a trial court's ruling on a Civ.R. 60(B) motion under an abuse of discretion standard of review to

determine whether the trial court's determination was unreasonable, arbitrary, or unconscionable. *See Moore v. Emmanuel Family Training Ctr., Inc.*, 18 Ohio St.3d 64, 66, 479 N.E.2d 879 (1985); *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶53} As an appellate court, we do not function as factfinders; we neither weigh the evidence nor judge the credibility of the witnesses. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). Our role is to determine whether there is relevant, competent, and credible evidence upon which the factfinder could base his or her judgment. *Id*. The trial court is "best able to view the witness and observe their demeanor, gestures, and voice inflictions, and use these observations in weighing the credibility of the proffered testimony." *Id*.

{¶54} Based on our review of the evidentiary hearing and motions under the abuse of discretion standard of review, we find the trial court did not abuse its discretion to find Wife was not entitled to relief from the Separation Agreement. The evidence demonstrated a complicated relationship between Husband and Wife, with differing interpretations as to the status of their relationship and the meanings of their interactions. There was no factual dispute that Husband had a separate residence, he was paying Wife $5,000 per month, and there was no comingling of assets. Husband testified they had not reconciled, and he wanted a divorce. He in fact had filed for divorce four times. Wife wanted to remain married but wanted a real marriage with Husband. Wife challenged the Separation Agreement once, but dismissed her contempt motion. She did not challenge the Separation Agreement again until the June 1, 2020 deadline for spousal

support had terminated and Husband filed for divorce within the terms of the Separation Agreement.

{¶55} The trial court was in the best position to determine the credibility of the parties and in this case, it found Husband more credible than Wife that they had not reconciled. We find no abuse of discretion based on the record. Wife's first Assignment of Error is overruled.

{¶56} Having found the Separation Agreement is valid, we now consider the remainder of Wife's Assignments of Error as to the Final Decree of Divorce.

### III. Section 2.1 Real Estate -- Appraisal Report

{¶57} In Wife's third Assignment of Error, she contends the trial court erred when it relied upon Husband's appraisal report of the Shady Stone residence.

### Terms of the Separation Agreement

{¶58} Section 2.1 of the Separation Agreement outlines the disposition of the Shady Stone residence. It states in pertinent part:

Should a subsequent divorce action be filed by either Husband or Wife * * *, Wife shall continue to have exclusive use and occupancy of said real property, pursuant to the terms and conditions previously set forth herein, until the sale of the property or Husband buying out Wife's marital equity, or as hereinafter set forth. Husband will have the first right to purchase Wife's marital equity in the real property. If he declines to purchase Wife's marital equity in the real property, then Wife will have the right to purchase Husband's marital equity in the real property. * * *

If either party desires to buy out the equity of the other, each party will secure a bona fide appraisal of the real property by a credentialed real estate appraiser. Should these appraisals vary, the average of the two appraisals will be utilized as the buy-out price, less the then current balance on the mortgage, * * *, divided by two. The average of the two appraisals will also be utilized, subject to the recommendations of the realtor, as a listing price.

{¶59} The amendment to the Separation Agreement further stated as to the real estate:

5. The parties agree that should either party file an action to dissolve the marriage after June 1, 2020; should husband elect to retain the marital home and buy out the wife's equity; Wife shall sign a quitclaim deed to husband immediately. The division of equity in the marital home shall be 75% to husband, 25% to wife.

### Appraisals of the Shady Stone Residence

{¶60} Husband notified opposing counsel and the trial court that he intended to retain the Shady Stone residence. Pursuant to the terms of the Separation Agreement, Husband had the first right to purchase Wife's marital equity in the Shady Stone residence. Husband and Wife each obtained an appraisal report for the residence.

{¶61} At trial, Husband testified as to the appraisal report he received from Heather Allman, a certified appraiser hired by Husband to do the appraisal of the Shady Stone residence. (Exhibit 2, T. 17). Husband's appraiser was not called as a witness. The final valuation of the Shady Stone residence was $645,000. (T. 17). Wife objected to

Husband testifying as to the appraisal report, not Husband's appraiser, which the trial court sustained. (T. 17). Husband was presented with the appraisal report completed for Wife and it was his opinion that the comparables were not accurate and Wife's appraisal was too high. (T. 19).

{¶62} Wife's appraiser testified at trial as to how she created the appraisal report for the Shady Stone residence. She was admitted as an expert witness on appraisals without objection. (T. 114). Based on Wife's appraiser's evaluation, she determined the value of the Shady Stone residence on June 24, 2021 was $800,000. (T. 113). On cross-examination, Wife's appraiser was presented with the appraisal report prepared for Husband by Heather Allman, a certified appraiser. (T. 116). Wife's appraiser testified that she knew Ms. Allman very well. (T. 116).

**Final Decree of Divorce**

{¶63} In the November 23, 2021 Final Decree of Divorce, the trial court noted the parties did not contest the language of Section 2.1 of the Separation Agreement. Pursuant to the language of the Separation Agreement, each party secured a bona fide appraisal by a credentialed real estate appraiser. The appraisals for the Shady Stone residence differed greatly, but the trial court found the Separation Agreement anticipated there may be a difference and stated, "Should these appraisals vary, the average of the two appraisals will be utilized as the buy-out price, less the then current balance on the mortgage, * * *, divided by two." The trial court found the language of the Separation Agreement to be clear and unambiguous as to how the real estate is to be divided.

{¶64} In its findings of fact, the trial court noted Wife objected to Husband's appraisal as being too low and that she did not have the opportunity to question

Husband's appraisal. The trial court found that there was no dispute of fact that both appraisers were credentialed, certified residential appraisers. Wife's appraiser knew Husband's appraiser very well and had worked with her before.

{¶65} The trial court reviewed the evidence as to the appraisals and found that the appraisals complied with the terms of the Separation Agreement. The Separation Agreement anticipated there would be different appraisals and specified the procedure for resolving the difference.

{¶66} The trial court concluded:

Pursuant to the Separation Agreement and Amendment, the Plaintiff will purchase the equity of Defendant within thirty (30) days of the filing of the final decree by paying to her twenty-five percent (25%) of the value established in the Separation Agreement and Amendment. The two (2) appraisals will be averaged for a resulting value of $722,500, which will then be reduced by the mortgage balance as of October 1, 2021, which is $548,623.59 for an equity of $173,867.41. Plaintiff will pay to the Defendant within thirty (30) days of the filing of the final decree the sum of $43,466.85 for her equity in the property.

### Bona Fide Appraisal

{¶67} In her appeal, Wife does not dispute the language of the Separation Agreement as to how the real estate was to be appraised and the equity determined and divided. Wife argues the trial court erred in relying upon Husband's appraisal report as a bona fide appraisal because Husband's appraiser did not appear as a witness to testify

to her appraisal report. She contends the trial court erred when it admitted Husband's appraisal report as evidence.

{¶68} When Husband was asked on direct to testify about the comparables listed in his appraisal report (Exhibit 2), Wife objected:

THE COURT: Basis?

ATTY WALKER: I don't believe… I mean if he's just going to be reading a report, I first off don't think it's bonafide. But second, they had the opportunity to bring I [sic] their appraisal to go through how the calculations were done and to review the comparable's.

THE COURT: Sustained. It is what it is and it says what it says. I can read it.

(T. 17-18).

{¶69} The trial court sustained Wife's objection to Husband's testimony regarding the appraisal report. Wife, however, does not point to the record where she objected, if at all, to the admission of Husband's appraisal report as an exhibit. "Ordinarily, a trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *State v. Romy*, 5th Dist. No. 2020 CA 00066, 2021-Ohio-501, 168 N.E.3d 86, 2021 WL 734758, ¶ 49 citing *Rigby v. Lake County*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). The appellate court must limit its review of the trial court's admission or exclusion of evidence to whether the trial court abused its discretion *Id*. The abuse of discretion standard is more than an error of judgment; it implies the court ruled arbitrarily,

unreasonably, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶70} We find no abuse of discretion by the trial court to admit evidence of Husband's appraisal report. The trial court noted that while Husband did not call his appraiser as a witness, Wife could have called the appraiser as a witness. Wife's appraiser, qualified as an expert witness, testified that she knew Husband's appraiser very well and Husband's appraiser was a certified appraiser. Finally, Wife objected to Husband's testimony as to the appraisal report but does not point this Court to where she objected to the admission of the appraisal report as an exhibit. In the trial court's ruling on Wife's objection to Husband's testimony, the trial court acknowledges that as factfinder, it is the role of the court to give the appraisal report the weight and credibility it deemed appropriate.

{¶71} We find no abuse of discretion by the trial court to admit and consider Husband's appraisal report. Wife's third Assignment of Error is overruled.

## IV. Cash to Wife

{¶72} Wife contends in her fourth Assignment of Error that the trial court erred when it did not include the accounts of Jackson Emergency Physicians, LLC when determining the parties' accounts.

### Terms of the Separation Agreement

{¶73} The pertinent sections of the Separation Agreement state:

**Section 2.4 – Bank Accounts, Brokerage Accounts**

Wife will retain as her property, free and clear from any claim by Husband,

her PNC checking and savings account, Wife's individual Fidelity accounts

as well as all custodial accounts for [children], and First Merit account in the name of MedAdmin Service, LLC.

Husband will retain as his property, free and clear from any claim by Wife, all accounts at First Merit Bank, including, but not limited to, his First Merit checking account, First Merit checking accounts in the name of Jackson Emergency Physicians Ltd., First Merit Health Savings account, Husband's Individual Fidelity account and custodial accounts, Fidelity college accounts, and 529 accounts for [children].

**Section 2.5 Business Interests**

Husband will retain as his property, free and clear from any claim by Wife, all of his right, title and interest in and to Jackson Emergency Physicians LTD.

Wife will retain as her property, free and clear from any claim by Husband, all of her right, title, and interest in and to MedAdmin Service LLC.

* * *

**Section 2.7 – Cash to Wife**

Husband will pay to Wife as division of property the sum of Fifty Thousand Dollars ($50,000) within thirty (30) days of a subsequent decree of divorce being filed. This sum in non modifiable [sic] and is considered total payment to Wife in lieu of a division of bank accounts for the period from December 12, 2009 through (1) year from the date of signing of this agreement.

Should this separation agreement remain in effect for a term longer than (1) year from the date of signing of this agreement; Only contributions made to

each party's accounts from earnings they each received after (1) year from

the date of signing this agreement, shall be subject to equitable division in

the event that a divorce action is filed.

### Jackson Emergency Physicians, LLC

{¶74} Husband incorporated Jackson Emergency Physicians, LLC in 2011 with the purpose of the company to take care of patients. (T. 54). Jackson Emergency Physicians, LLC has one bank account at Huntington Bank. (T. 49). Wife argues she presented evidence at trial that established Husband utilized Jackson Emergency Physicians "as his personal bank account sheltering his marital asset that would be subject to division" under Section 2.7 of the Separation Agreement. (T. 57). For example, when Husband purchased his home in 2020, the property was deeded to Jackson Emergency Physicians, LLC for malpractice protection purposes. (T. 54). Jackson Emergency Physicians paid Husband's divorce counsel $6,200 for legal fees. (T. 56). Jackson Emergency Physicians did not pay Husband a salary; Husband paid his personal expenses from the business account as income. Wife understood Section 2.7 to mean all deposits in all bank accounts, including business accounts.

### Final Divorce Decree

{¶75} The trial court did not mince words at the quality of the Separation Agreement:

11. The Separation Agreement is poorly written, ambiguous in part and appears contradictory in part. No one admits to crafting the Separation Agreement. The three (3) attorneys representing the parties at the time of the Legal Separation all have sworn by affidavit that they did not prepare

the Separation Agreement. * * * The Court cannot determine who wrote the

document, therefore cannot determine how to interpret ambiguous sections

against a preparer.

(Final Decree of Divorce, Nov. 23, 2021).

{¶76} As to Section 2.7, the trial court interpreted the second paragraph of Section 2.7 to equitably divide separate property accrued after the Decree of Legal Separation was filed. The Separation Agreement did not define the phrase, "party's accounts," but the trial court found it was an attempt to equitably divide non-marital personal bank accounts to provide further cash to Wife. The trial court acknowledged Wife argued the Jackson Emergency Physicians bank account should be treated as Husband's personal account and divided pursuant to Section 2.7, based on the evidence presented that Husband paid personal expenses out of the Jackson Emergency Physicians account.

{¶77} The trial court found that under Section 2.5, the parties agreed that Husband retained Jackson Emergency Physicians free and clear from any claim of Wife. To include the business accounts in the cash division to Wife would be contrary to Section 2.5. Accordingly, based on the trial court's interpretation of the Separation Agreement, the trial court did not include the Jackson Emergency Physician bank account when equitably dividing the "party's accounts" pursuant to Section 2.7.

**Terms of the Separation Agreement Prevail**

{¶78} In her argument on appeal, Wife does not dispute the language of the Separation Agreement as to Section 2.4, Section 2.5, or Section 2.7. Wife disputes the trial court's finding that the Jackson Emergency Physicians bank account was not Husband's personal bank account based on the evidence presented as to Husband's use

of that account. We find, however, that the trial court's determination as to the status of the Jackson Emergency Physicians account was based on its interpretation of the Separation Agreement.

{¶79} Because the divorce decree incorporates the Separation Agreement, the determination of the above involves the application of the general rules of contract interpretation. Where ambiguity is complained of and where the parties dispute the meaning of clauses in the agreement, it is the duty of the court to examine the contract and determine whether the ambiguity exists. *Casner v. Casner*, 5th Dist. No. 18-CA-48, 2018-Ohio-5078, 126 N.E.3d 302, 2018 WL 6620092, ¶ 14. If an ambiguity does exist, the court has the duty and the power to clarify and interpret such clauses by considering the intent of the parties as well as the fairness of the agreement. *Id.*; *Houchins v. Houchins*, 5th Dist. Stark No. 2006CA00205, 2007-Ohio-1450, 2007 WL 926479. The question of perceived inequity is not relevant to the issue of whether the language of the decree is ambiguous on its face. *Oberst v. Oberst*, 5th Dist. Fairfield No. 09-CA-54, 2010-Ohio-452, citing *Pierron v. Pierron*, 4th Dist. Scioto No. 07CA3153, 2008-Ohio-1286, 2008 WL 746948.

{¶80} However, if the terms of the decree are unambiguous, then the court must apply the normal rules of construction. *Id.* The interpretation of the clause is a matter of law and the court must interpret the intent of the parties using only the language employed. *Id.* "[W]hen a term in an agreement is unambiguous, then the words must be given their plain, ordinary and common meaning; however, when the term is not clear, parol evidence is admissible to explain the meaning of the words." *Forstner v. Forstner*, 68 Ohio App.3d 367, 588 N.E.2d 285 (11th Dist. 1990).

{¶81} The Separation Agreement did not define the meaning of "party's accounts" in Section 2.7. However, in Section 2.4, it listed the parties' bank accounts and stated, "Husband will retain as his property, free and clear from any claim by Wife, all accounts at First Merit Bank, including, but not limited to, * * * First Merit checking accounts in the name of Jackson Emergency Physicians Ltd * * *." In Section 2.5, the parties agreed that Husband would retain as his property, free and clear from any claim by Wife, all of his right, title, and interest in and to Jackson Emergency Physicians. We find no error in law based on the trial court's interpretation of the Separation Agreement to find that Wife had no rights as to the Jackson Emergency Physicians bank account.

{¶82} Wife's fourth Assignment of Error is overruled.

## VI. Household Goods

{¶83} In her sixth Assignment of Error, Wife contends the trial court erred when it ordered that the contents of the Shady Stone residence be designated as marital property. We disagree.

## Terms of the Separation Agreement

{¶84} The Separation Agreement stated as follows as to the division of the contents of the Shady Stone residence:

### Section 2.3 – Household Goods

Husband and Wife will each retain any items of household furniture and furnishings which he or she brought to the marriage and the balance of household furniture and furnishings in the real property located at [Shady Stone residence] will be equally divided between Husband and Wife.

Should the parties be unable to agree on the division within thirty days of the filing of the subsequent divorce action, the parties will submit the dispute to mediation to resolve the issue no later than sixty days from the date of the filing of any subsequent divorce action. Husband and Wife will equally share the cost of the mediation.

{¶85} At trial, Husband testified everything in the Shady Stone residence was premarital. (T. 40). In her brief on appeal, Wife does not refer this Court to the record where she demonstrated the contents of the Shady Stone residence were marital or separate property.

### Final Divorce Decree

{¶86} The trial court found that Husband failed to remove his alleged premarital household goods from the Shady Stone residence at the time of the Legal Separation in April 2016 and still had not at the date of the trial. Husband also failed to list any household goods as premarital in his financial affidavits. Wife had testified that she did not realize any of the household goods were contested.

{¶87} The parties failed to comply with the terms of Section 2.3 of the Separation Agreement. As such, the trial court found that all household goods and furnishings located in the Shady Stone residence were marital and should be divided equally between the parties.

### Marital Property

{¶88} R.C. § 3105.171(B) states in pertinent part that "[i]n divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall

divide the marital and separate property equitably between the spouses, in accordance with this section. For purposes of this section, the court has jurisdiction over all property, excluding the social security benefits of a spouse other than as set forth in division (F)(9) of this section, in which one or both spouses have an interest." There is a presumption in Ohio that an asset acquired during the course of the marriage is marital property, unless proved otherwise. *Haven v. Haven*, 5th Dist. Ashland No. 12-COA-013, 2012-Ohio-5347, ¶ 23. Correspondingly, the definition of "separate property" includes "[a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage[.]" R.C. § 3105.171(A)(6)(a)(ii).

{¶89} The characterization of property as marital or separate must be supported by sufficient, credible evidence. *Kess v. Kess*, 5th Dist. Delaware No. 15 CAF 10 0076, 2018-Ohio-1370, 2018 WL 1750932, ¶ 51 citing *Chase–Carey v. Carey*, 5th Dist. Coshocton No. 99CA1, 1999 WL 770172. The party to a divorce action seeking to establish that an asset or portion of an asset is separate property, rather than marital property, has the burden of proof by a preponderance of the evidence. *Passyalia v. Moneir*, 5th Dist. Stark No. 2016 CA 00182, 2017–Ohio–7033, ¶ 18 citing Cooper v. Cooper, 5th Dist. Licking No. 14 CA 100, 2015–Ohio–4048, ¶ 45, citing *Zeefe v. Zeefe*, 125 Ohio App.3d 600, 614, 709 N.E.2d 208 (1998).

{¶90} A party who wants an asset classified as separate property bears the burden of tracing that asset to his or her separate property. *Dunham v. Dunham*, 171 Ohio App.3d 147, 870 N.E.2d 168, 2007–Ohio–1167 at ¶ 20. When parties contest whether an asset is marital or separate property, the presumption is that the property is

marital, unless proven otherwise. *C.S. v. M.S.*, 9th Dist. Summit No. 29070, 2019-Ohio-1876, 2019 WL 2147898, ¶ 16.

{¶91} Wife contends the trial court's ruling on the household goods is inconsistent with the trial court's January 6, 2021 judgment entry where it stated, "Husband did not remove household goods after the separation, again they are now Wife's assets and to her benefit." (T. 41). The issue before the trial court in its January 6, 2021 judgment entry was the validity of the Separation Agreement. The equitable division of property after being designated as marital or separate property was not before the trial court at that time. Section 2.3 states that "Husband and Wife will retain any items of household furniture and furnishings which he or she brought to the marriage." The parties presented evidence at the August and September trial as to the items that he or she brought to the marriage.

{¶92} Based on the evidence in this record, we find no abuse of discretion for the trial court to designate the contents of the Shady Stone residence as marital, not separate, property.

{¶93} Wife's sixth assignment of error is overruled.

## VII. Passive Growth

{¶94} In her seventh Assignment of Error, Wife contends the trial court erred when it conducted a passive growth analysis on the parties' retirement accounts when the terms of the Separation Agreement did not include any reference to passive growth.

### Terms of the Separation Agreement

{¶95} Section 2.6 of the Separation Agreement states in pertinent part:

**Section 2.6 Retirement Benefits**

The parties shall equally divide only the marital portion of the Wife's MedAdmin Service LLC 401K and only the marital portion of the Husband's Jackson Emergency Physicians LLC 401K by a Qualified Domestic Relations Order, asset to be determined by QDRO Consultants, Inc. based upon the following formula:

Value of Husband's 401(K) as of the date of final order of divorce; minus

Premarital value of Husband's 401(K) as of December 12, 2009;

Divided by two

Value of Wife's 401(K) as of the date of the final order of divorce; minus

Premarital value of Wife's 401(K) as of December 12, 2009;

divided by two

Husband and wife both shall furnish any necessary documentation for calculations and underlying data utilized by QDRO Consultants, Inc. in its analysis. The parties agree to split equally the cost of the qualified domestic relations order by QDRO Consultants, Inc.

**Silence as to Passive Growth and Final Decree of Divorce**

{¶96} At trial, James Coco with QDRO Consultants, Inc. was presented as Husband's witness. He conducted an analysis of Husband's retirement accounts from the date of marriage as December 12, 2009 and the divorce date/last date of marital acquisition as December 31, 2017. (T. 8-9). The issue of passive growth came up. (T. 10). The parties agreed that the Separation Agreement was silent as to the calculation of passive growth. Wife contended that based on the Separation Agreement's failure to address passive growth of the parties' retirement accounts, you would simply take the

ending balance minus the beginning balance when the parties were married, and that would be the marital property. (T. 23). James Coco testified, "If…if I was told to ignore passive growth we wouldn't even be needed. We wouldn't be hired. But if I was told to come up with a number, I would simply take that number minus the beginning balance when they got married which was two ninety-five and some change." (T. 24).

{¶97} The trial court found that James Coco's analysis of Husband's retirement accounts, which included calculations for passive growth, was in compliance with Section 2.6 of the Separation Agreement. The trial court stated in the Final Divorce Decree:

16. Section 2.6 entitled "Retirement Benefits" is in dispute. This section clearly identifies equal division of only the marital portion of the retirement accounts. While "passive growth" is not specifically mentioned, passive growth is part of the non-marital portion. Ohio Revised Code § 3105.171(A)(6)(a) defines separate property:

(6)(a) "Separate property" means all and real personal property and any interest in real or personal property that is found by the court to be any of the following:

* * *

(iii) passive income and appreciation acquired from separate property by one spouse during the marriage.

(iv) any real or personal property or interest in real or personal property acquired by one spouse after a decree of legal separation issued under section 3105.17 of the Revised Code;

{¶98} The trial court found the evidence in this case showed the Separation Agreement was prepared by laypeople who would not understand passive growth, but that it was a required consideration under R.C. 3105.171. If the parties did not want passive growth included in the calculation, they should have expressly excluded passive growth in the language of the Separation Agreement. The trial court further relied upon the testimony of James Coco. Mr. Coco testified that passive growth calculation always happens; if the parties did not wish to include passive growth, they would not have hired QDRO Consultants, Inc.

{¶99} Where ambiguity is complained of and where the parties dispute the meaning of clauses in the agreement, it is the duty of the court to examine the contract and determine whether the ambiguity exists. *Casner v. Casner*, 5th Dist. No. 18-CA-48, 2018-Ohio-5078, 126 N.E.3d 302, 2018 WL 6620092, ¶ 14. If an ambiguity does exist, the court has the duty and the power to clarify and interpret such clauses by considering the intent of the parties as well as the fairness of the agreement. *Id.*; *Houchins v. Houchins*, 5th Dist. Stark No. 2006CA00205, 2007-Ohio-1450, 2007 WL 926479.

{¶100} We find the trial court properly resolved the ambiguity in the Separation Agreement. Pursuant to the agreed terms of Section 2.6 of the Separation Agreement, the parties specifically request that QDRO Consultants, Inc. complete the analysis of the parties' retirement accounts to determine the marital portion. As Mr. Coco testified, if passive growth was not a consideration, there would be no purpose for QDRO Consultants, Inc. to conduct an analysis of the data.

{¶101} In dividing property in a divorce proceeding, a trial court must first "determine what constitutes marital property and what constitutes separate property."

*Grow v. Grow*, 12th Dist. Butler Nos. CA2010–08–209, CA2010–08–218, and CA2010–11–301, 2012-Ohio-1680, 2012 WL 1269118, ¶ 11, quoting R.C. 3105.171(B). R.C. 3105.171(A)(6)(a)(iii) states that separate property is "[p]assive income and appreciation acquired from separate property by one spouse during the marriage." "Passive income" is defined as "income acquired other than as a result of the labor, monetary, or in-kind contribution of either spouse." R.C. 3105.171(A)(4).

{¶102}       Wife's seventh Assignment of Error is overruled.

## II. and V. Financial Misconduct

{¶103} We consider Wife's second and fifth Assignments of Error together because she alleges the trial court erred when it found Husband did not engage in financial misconduct.

{¶104} A determination on financial misconduct rests on the facts and circumstances of each case. *Orwick v. Orwick*, 7th Dist. Jefferson No. 04 JE 14, 2005-Ohio-5055. As such, the trier of fact is given the duty to determine the credibility of each party's assertions in determining financial misconduct. *State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180 (1990); *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

{¶105} R.C. 3105.171 governs division of marital property. Subsection (E)(4) states: "If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." As stated by this Court in *Kilpatrick v. Kilpatrick*, 5th Dist. Delaware No. 10 CAF 09 0080, 2011-Ohio-443, ¶ 29–30:

The trial court has discretion in determining whether a spouse committed financial misconduct, subject to a review of whether the determination is against the manifest weight of the evidence. *Boggs v. Boggs*, Delaware App. No. 07 CAF 02, 2008-Ohio-1411 at paragraph 73, citing *Babka v. Babka* (1992), 83 Ohio App.3d 428, 615 N.E.2d 247. Financial misconduct implies some type of wrongdoing such as interference with the other spouse's property rights. *Bucalo v. Bucalo*, Medina App. No. 05CA0011–M, 2005-Ohio-6319. The burden of proving financial misconduct is on the complaining party. *Gallo v. Gallo*, 2002-Ohio-2815, Lake App. No. 2000–L–208.

{¶106}    As found by this court in *Shalash v. Shalash*, 5th Dist. Delaware No. 12 CAF 11 0079, 2013-Ohio-5064, ¶ 24:

To find financial misconduct, a court must look to the reasons behind the questioned activity or the results of the activity and determine whether the wrongdoer profited from the activity or intentionally dissipated, destroyed, concealed, or fraudulently disposed of the other spouse's assets. *Thomas v. Thomas*, 2012-Ohio-2893, 974 Ohio App.3d 679, ¶ 63 (5th Dist.).

{¶107}    On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485

N.E.2d 717 (1st Dist.1983). *See also, State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541; *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517. In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley* at ¶ 21. "In a civil case, in which the burden of persuasion is only by a preponderance of the evidence, rather than beyond a reasonable doubt, evidence must still exist on each element (sufficiency) and the evidence on each element must satisfy the burden of persuasion (weight)." *Id.* at ¶ 19.

### Husband's Purchase of a Home

{¶108}      Husband possessed a Fidelity Brokerage Account, ending in 5898. On July 31, 2020, Husband withdrew $565,000 from the account and used the funds to purchase a home on Perry Drive. The Perry Drive home was deeded in the name of Jackson Emergency Physicians, LLC. Husband filed the divorce complaint in the present case on September 1, 2020.

{¶109} Wife argued at trial that Husband engaged in financial misconduct by dissipating $565,000 in marital assets approximately 30 days before he filed his complaint for divorce. He further compounded the financial conduct by placing the home in the name of Jackson Emergency Physicians, thereby rendering it separate property. In the Final Decree of Divorce, the trial court found the Fidelity Brokerage Account, ending in 5898, was a marital asset to be equally divided.

{¶110} In the Final Decree of Divorce, the trial court found no financial misconduct by Husband as to the purchase of the home. The evidence in the case showed that since 2016, Wife resided in the marital home and Husband rented a home. The trial court found it was reasonable for Husband to purchase a home. Further, since

2016, the parties were guided by the terms of the Separation Agreement and there was nothing in the Separation Agreement that required any accounting for expenditures, preservation of assets, or required approval prior to purchase. After the inception of the Decree of Legal Separation, assets were considered separate property. In this case, the trial court looked behind the reasons of the questioned activity and found the purpose of Husband's removal of assets was to purchase a home for himself. Further, the parties' behavior was governed by the Separation Agreement, which did not include any language preventing Husband from purchasing real estate. We find the trial court weighed the evidence to find that the purchase of the home with funds from the Fidelity brokerage account did not rise to the level of financial misconduct.

{¶111} Wife's second Assignment of Error is overruled.

**$700,000 Loss**

{¶112} At trial, evidence was presented that the ending balance of the Long- Term Investments shown in Jackson Emergency Physicians corporate 2019 tax return  was $872,107. In Jackson Emergency Physicians 2020 corporate tax return, the balance  was $172,107. Husband had no explanation for the $700,000 loss in investments. Wife testified that she did not know what a long term investment was and she was asking the trial court to award her one-half of the allegedly missing $700,000 asset.

{¶113} The trial court found that based on the Separation Agreement, there  was no term requiring division of long-term investments or assets. We note the trial court  did not make a specific finding of no financial misconduct on the part of Husband because  upon our review of the record, we cannot find that Wife specifically requested the trial  court to make a finding of financial misconduct pursuant to R.C. 3105.171(E)(4), as she

did when Husband purchased his home. Wife asked the trial court for one-half of the missing asset. Upon this record, we cannot find the trial court erred when it found Wife was not entitled to one-half of the $700,000 loss in long-term investments.

{¶114}    Wife's fifth Assignment of Error is overruled.

**Cross-Appeal I.**

{¶115}   Husband contends in his first Cross-Assignment of Error that the trial court erred in failing to order Husband's attorney fees be paid by Wife, per the terms of the Separation Agreement.

{¶116} It is well-established that an award of attorney fees is within the sound discretion of the trial court. *Zimmerman v. Zimmerman*, 12th Dist. Butler No. CA2014-06-127, 2015-Ohio-1700, 2015 WL 1976430, ¶ 20 citing *Foppe* v. *Foppe*, 12th Dist. Warren No. CA2010–06–056, 2011–Ohio–49, ¶ 34. An abuse of discretion is more than an error of law; it implies the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶117} In the Final Divorce Decree, the trial court declined to order the payment of additional attorney fees above that previously ordered based on the underlying history of the case. Both parties argued for and against certain sections of the Separation Agreement, which the trial court found was vague, ambiguous, and contradictory. We find no abuse of discretion for the trial court to decline to award further attorney fees.

{¶118}    Husband's first Cross-Assignment of Error is overruled.

**Cross-Appeal II.**

{¶119} In Husband's second Cross-Assignment of Error, he argues the trial court erred when it designated the Fidelity Brokerage Account, ending in 5898, as marital property to be divided between the parties. We disagree.

{¶120} He contends the evidence demonstrated the Fidelity account in question was funded with deposits from the Jackson Emergency Physicians and therefore should have been deemed separate property. An appellate court generally reviews the overall appropriateness of the trial court's property division in divorce proceedings under an abuse of discretion standard. *Cherry v. Cherry*, 66 Ohio St.2d 348, 421 N.E.2d 1293 (1981). In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶121} Pursuant to R.C. 3105.171(B), "[i]n divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section. * * *" The characterization of property as marital or separate must be supported by sufficient, credible evidence. *See Chase–Carey v. Carey*, 5th Dist. Coshocton No. 99CA1, 1999 WL 770172. The party to a divorce action seeking to establish that an asset or portion of an asset is separate property, rather than marital property, has the burden of proof by a preponderance of the evidence. *Passyalia v. Moneir*, 5th Dist. Stark No. 2016 CA 00182, 2017–Ohio–7033, ¶ 18 citing *Cooper v. Cooper*, 5th Dist. Licking No. 14

CA 100, 2015–Ohio–4048, ¶ 45, citing *Zeefe v. Zeefe*, 125 Ohio App.3d 600, 614, 709 N.E.2d 208 (1998).

{¶122}     The trial court found Husband did not establish by a preponderance of the evidence that the Fidelity account in question was a separate asset. We find no abuse of discretion for the trial court to designate the Fidelity account as marital property to be equitably divided between the parties.

{¶123}     Husband's second Cross-Assignment of Error is overruled.

## CONCLUSION

{¶124}  The judgment of the Stark County Court of Common Pleas, Domestic Relations Division, is affirmed.

By:  Delaney, J.,

Wise, Earle, P.J. and

Gwin, J., concur.